[No. B090062. Second Dist., Div. Five. Oct. 3, 1995.]

NAOMI CAMPANANO et al., Plaintiffs and Appellants, v.
CALIFORNIA MEDICAL CENTER, Defendant and Respondent.

1324

**COUNSEL**

Gary Spritz and William J. Cleary, Jr., for Plaintiffs and Appellants.

Rushfeldt, Shelley & Drake, Jo-Ann Horn Maynard and Dawn M. Costello for Defendant and Respondent.

## OPINION

GRIGNON, J.—Plaintiffs and appellants Naomi and Jeolfa Campanano appeal from a summary judgment entered against them and in favor of defendant and respondent California Medical Center (Hospital). We are asked to determine the accrual date of a cause of action for "bystander" negligent infliction of emotional distress. We conclude, as a general rule, that the cause of action accrues at the time of the injury-producing event and, in this case, no facts justifying delayed accrual have been presented. Accordingly, the statute of limitations ran in this case prior to the filing of the complaint. We affirm the summary judgment.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiffs are the mother and sister of Raquel Directo. On December 28, 1992, Directo was admitted into Hospital in a coma. On January 9, 1993, plaintiffs witnessed an intravenous line (I.V.) improperly placed in Directo's arm. Another relative of Directo, who was a registered nurse, recognized that the I.V. was infusing fluid directly into Directo's arm rather than into her vein. Plaintiffs observed discoloring, blistering and swelling of Directo's arm, as a result of the infusion. Plaintiffs informed Hospital personnel of their concerns and the I.V. was removed later that same day. No further I.V. was placed in Directo's arm. However, Directo's arm did not improve; rather, its condition worsened. The arm became gangrenous and was amputated on January 16, 1993. Directo died in spring 1993, never having regained consciousness.

### Allegations of the Operative Complaint

On January 13, 1994, plaintiffs filed their complaint against Hospital seeking recovery for negligent infliction of emotional distress. A first amended complaint was subsequently filed. Plaintiffs alleged the following. Hospital had been negligent in its treatment of Directo; specifically, Hospital had "failed to properly manage injections and infusions [Directo] was receiving, causing disruption of her circulation and amputation of her arm on January 16, 1993." As a result of the improperly placed I.V., plaintiffs had been "aware that the fluid was injuring [Directo] as they watched it infuse into her arm, because they could see that the I.V. needle was improperly placed, and the fluid was infiltrating into [Directo's] body. As the fluid

infused, plaintiffs watched [Directo's] arm develop numerous frightening-looking bubbles, and swell to several times its normal size." Hospital personnel had refused plaintiffs' requests to treat Directo until the amputation on January 16, 1993. "This entire incident, where plaintiffs watched helplessly, knowing that the infiltrating fluid caused their loved one's arm to become disfigured and assume grotesque proportions, and where plaintiffs witnessed the apparent neglect of [Directo's] immediate medical needs, was an abnormal event which was shocking and profoundly disturbing to plaintiffs, each of whom was seriously emotionally disturbed by this grotesque sight and by [H]ospital's refusal to do anything to correct it."

*Hospital's Motion for Summary Judgment*

On September 12, 1994, Hospital moved for summary judgment, asserting plaintiffs' complaint was barred by the one-year statute of limitations. Relying on excerpts from the depositions of plaintiffs, Hospital demonstrated that the improperly placed I.V. had been removed on January 9, 1993, and plaintiffs had been aware of problems with Directo's treatment by January 10, 1993. Hospital argued in response that a cause of action for negligent infliction of emotional distress requires that the plaintiff suffer serious emotional distress at the time of the negligent injury to the third party. Because Directo's injury occurred on January 9, 1993, and the complaint was not filed until January 13, 1994, Hospital argued the action was time-barred.

In opposition, plaintiffs conceded the applicability of the one-year statute of limitations, but argued that it did not bar their complaint because their cause of action had not accrued until January 16, 1993, the date of the amputation. Plaintiffs submitted declarations suggesting that, although they had been upset on January 9, 1993, their emotional distress had not become serious until January 16, 1993.

The trial court agreed with Hospital and granted the motion. Judgment was entered on November 4, 1994. Plaintiffs filed a timely notice of appeal.

## DISCUSSION

Plaintiffs contend the trial court erred in granting the motion for summary judgment in that their cause of action for negligent infliction of emotional distress did not accrue until the amputation, the last act causing them injury, occurred.

*Standard of Review*

█ "The policy underlying motions for summary judgment and summary adjudication of issues is to ' "promote and protect the administration of

justice, and to expedite litigation by the elimination of needless trials." ' " (*Hood* v. *Superior Court* (1995) 33 Cal.App.4th 319, 323 [39 Cal.Rptr.2d 296].)

"Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding." (Code Civ. Proc., § 437c, subd. (a).) "The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence . . . and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted . . . on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c); *KOVR-TV, Inc.* v. *Superior Court* (1995) 31 Cal.App.4th 1023, 1028 [37 Cal.Rptr.2d 431].)

■ A defendant or cross-defendant meets his or her burden upon a motion for summary judgment or summary adjudication if that party has proved "one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (o)(2).) Once the defendant or cross-defendant has met that burden, the "burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists . . . ." (*Ibid.*; *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573 [37 Cal.Rptr.2d 653].)

■ On appeal, we exercise "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court . . . ." (*Iverson* v. *Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222 [38 Cal.Rptr.2d 35]; *Union Bank* v. *Superior Court, supra*, 31 Cal.App.4th at p. 579.) "[W]e construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it." (*Szadolci* v. *Hollywood Park Operating Co.* (1993) 14 Cal.App.4th 16, 19 [17 Cal.Rptr.2d 356]; accord, *Lorenzen-Hughes* v. *MacElhenny, Levy & Co.* (1994) 24 Cal.App.4th 1684, 1686 [30 Cal.Rptr.2d 210].)

*Negligent Infliction of Emotional Distress*

The parties agree that plaintiffs' cause of action for negligent infliction of emotional distress is subject to a one-year statute of limitations.[1] The issue presented is whether plaintiffs' cause of action for negligent infliction of emotional distress accrued on January 9, 1993, in which case it is concededly time-barred, or January 16, 1993, in which case the summary judgment must be reversed.

■ The Supreme Court has established a three-part test which must be satisfied in order for a plaintiff to state a cause of action for "bystander" negligent infliction of emotional distress: "In the absence of physical injury or impact to the plaintiff himself, damages for emotional distress should be recoverable only if the plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim; and (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness." (*Thing* v. *La Chusa* (1989) 48 Cal.3d 644, 647 [257 Cal.Rptr. 865, 771 P.2d 814].) In the absence of immediate presence at the injury-producing event, recovery is precluded. (*Id.* at pp. 647-648, 669.)

The emotional distress must occur "as a result" of a plaintiff's presence at the injury-producing event and contemporaneous awareness that the event is causing injury to the victim.[2] A plaintiff may not recover for all emotional distress suffered as a result of the victim's injury. Instead, the plaintiff may recover only for the emotional distress suffered as a result of plaintiff's presence at the injury-producing event and the contemporaneous awareness that the injury was being suffered. (*Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159, 165, fn. 6 [216 Cal.Rptr. 661, 703 P.2d 1] [father who observed neglect of his son's medical needs may recover for the distress he suffered based only on the single occasion he observed the neglect, not for the distress he suffered as a result of being informed by his wife of further neglect]; see also *Krouse* v. *Graham* (1977) 19 Cal.3d 59, 77-78 [137 Cal.Rptr. 863, 562 P.2d 1022] [husband could recover for the emotional injury suffered as the "direct emotional impact of his sensory and contemporaneous observance of the accident," but not for any injury caused from his grief and sorrow over the loss of his wife or his feelings of anger and

[1] We express no opinion on the applicable statute of limitations. (See Code Civ. Proc., §§ 340, subd. (3), 340.5.)

[2] This has been a requirement of the cause of action since it was first recognized in 1968. Previously, courts were directed to perform a case-by-case analysis, weighing factors including: "Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident . . . ." (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 740 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

retribution]; *Aldaco* v. *Tropic Ice Cream Co.* (1980) 110 Cal.App.3d 523, 526 [168 Cal.Rptr. 59] [recognizing "the plaintiff's emotional shock must necessarily occur at the time [plaintiff] observes the injury."].) ▮ Accordingly, the cause of action accrues at the time of the injury-producing event.

Plaintiffs' complaint suggests three potential injury-producing events: the fluid infusion into Directo's arm; Hospital's failure to treat Directo despite plaintiffs' pleas; and the amputation. With respect to the infusion of fluid into Directo's arm, it is undisputed that the infusion ceased when the I.V. was removed on January 9, 1993. Any serious emotional distress plaintiffs suffered while contemporaneously observing the infusion created a cause of action for "bystander" negligent infliction of emotional distress on January 9, 1993. Since the complaint was not filed until January 13, 1994, such a cause of action is barred by the one-year statute of limitations. As to plaintiffs "repeatedly request[ing] treatment" for Directo and repeatedly being rebuffed by Hospital personnel, deposition testimony of plaintiffs clearly establishes that they did not request further treatment for Directo after the I.V. was removed.[3] Moreover, plaintiffs do not pursue this theory on appeal. Finally, the amputation of Directo's arm cannot independently support a cause of action for negligent infliction of emotional distress because plaintiffs were not present at the injury-producing event, but only learned of it after the fact.

Alternatively, plaintiffs contend their cause of action was initially triggered by the infusion they observed, but did not fully accrue until they suffered serious emotional distress as a result of the amputation. Plaintiffs argue that only after the amputation did their damages reach the level of severity sufficient to support a cause of action for negligent infliction of emotional distress. We disagree. Even if plaintiffs' cause of action were otherwise timely, emotional distress damages caused by the amputation would not be recoverable. The only recoverable damages are those which arose directly out of plaintiffs' observation of the injury-producing event, the infusion. Any distress which arose from plaintiffs' observation of subsequent injuries to or treatment of Directo is simply not compensable. As such, the distress incurred as a result of the amputation could not delay the accrual of the cause of action in this case.[4]

We conclude the cause of action accrued at the time of the injury-producing event, i.e., the infusion of fluids into Directo's arm on January 9,

---

[3]Jeolfa Campanano testified that she did not remember "talking to any nurses there to take care, like special care for my sister" because she believed the nurses had a duty to take care of patients without any requests. Naomi Campanano testified that she did not talk to any of the nurses about Directo's arm, nor ask them to do anything to reduce the swelling or blisters.

[4]We do not address the issue of delayed accrual as a result of a delayed emotional reaction to an injury-producing event, such as post-traumatic-stress injury.

1993. We also conclude that the further distress suffered on January 16, 1993, as a result of the amputation of Directo's arm, did not delay accrual of the cause of action. Thus, the complaint filed on January 13, 1994, was filed more than one year after accrual of the cause of action and is therefore time-barred.

## DISPOSITION

The judgment is affirmed. Hospital is to recover its costs on appeal from plaintiffs.

Turner, P. J., and Armstrong, J., concurred.