[No. F023815. Fifth Dist. June 14, 1996.]

KENNETH VAN DYKE et al., Plaintiffs and Appellants, v.
DUNKER AND ACED et al., Defendants and Respondents.

## Counsel

Brian C. Davis for Plaintiffs and Appellants.

Sher, Blumenfeld & O'Leary, Sturgeon, Keller, Phillips & Gee, Sturgeon, Keller, Phillips, Gee & O'Leary and Timothy F. O'Leary for Defendants and Respondents.

## Opinion

**THAXTER, J.**—This professional malpractice action arises from erroneous income tax advice allegedly given by defendant accountants. Relying on the advice, the plaintiffs made a charitable contribution. When their income tax returns for the period were prepared and filed, they learned the advice was incorrect and they incurred taxes greater than expected. The trial court granted summary judgment for the defendants, concluding that the plaintiffs both discovered the negligence and suffered actual injury when they filed the tax return and paid their taxes. Because that occurred more than two years before they filed their complaint, the action was time-barred by Code of Civil Procedure section 339, subdivision 1.[1] We will agree with the trial court and affirm. The "bright line" rule adopted by the Supreme Court in *International Engine Parts, Inc.* v. *Feddersen & Co.* (1995) 9 Cal.4th 606 [38 Cal.Rptr.2d 150, 888 P.2d 1279] (*Feddersen*), for cases based on negligent preparation of returns, does not apply here.

### Facts and Procedural History

According to the allegations of the first amended complaint, Dunker and Aced, an accountancy corporation, and Galen Gray, an accountant, (collectively respondents) agreed to provide tax advice and prepare 1989 and 1990 tax returns for Kenneth and Roberta Van Dyke (appellants). During that period, respondents ". . . negligently advised [appellants] to donate real estate worth $125,000.00, in order to receive a tax deduction of equal value . . . [and] negligently advised [appellants] that they could deduct the full

---

[1]Further statutory references are to the Code of Civil Procedure.

$125,000.00 from their tax obligations for 1989 and 1990." After appellants donated the property, respondents advised them they "could only deduct a portion" of the property's value and the "credit against taxes would have to be prorated over 10 years." As a result of respondents' negligence, appellants "received only a tax credit of about $23,250.00 resulting in damages of approximately $102,750.00, plus interest . . . ." Appellants alleged they did not learn of respondents' negligence until August 1993. They filed their complaint on June 7, 1994.

Respondents moved for summary judgment contending appellants' claim for professional malpractice was barred by the two-year limitations period of section 339, subdivision 1. The evidence presented in support of and in opposition to the motion demonstrated that, in 1989 and 1990, appellants realized substantial income from the sale of real property. They sought accountant Galen Gray's advice regarding whether they should donate a parcel of property to a qualifying charitable organization to offset the tax liability they expected from the property sales. Gray informed them they would receive a "dollar-for-dollar" tax credit for the fair market value of the land donated. Relying on that advice, appellants donated a parcel appraised at $125,000 to the Oakdale Fire District on December 27, 1990. Gray advised them the donation would result in a $125,000 tax credit which appellants believed was about equal to their tax liability for 1989.[2]

On September 30, 1991, respondents delivered to appellants the completed 1990 tax returns. The returns did not reflect any credit against taxes for the charitable contribution. Instead, the gift was shown as a deduction from adjusted gross income (AGI), but only for $75,000 rather than $125,000 because of an Internal Revenue Code (IRC) limitation on the deductibility of charitable contributions of real property. Appellants paid taxes in 1991 based on the $75,000 deduction. According to appellants, Mr. Gray told them "he had made the mistake in his initial representations . . . as to the tax credit and informed us that instead we would only get a tax deduction. We were also informed for the first time in 1991 by Mr. Gray that we would have to spread out our tax deductions over a number of years . . . . [¶] Had we known that the limitation on tax deductions as to the donation of our $125,000.00 parcel, we would never have donated that but instead would have sold the parcel, generating enough sale proceeds to pay the taxes and still receive a profit over and above our tax liability." Appellants had to borrow money from relatives at 10 percent interest to pay their

---

[2]Appellants do not explain how they believed the 1990 donation would offset their 1989 taxes. Their claim for damages seems to be based on the 1990 tax calculations, and it may be that the reference to the 1989 taxes was simply an error in drafting or typing the supporting declaration. The matter has no significance on the statute of limitations issue before us.

1990 tax obligations. As of March 14, 1995, they had accrued four years of interest on the borrowed money which they would not have incurred but for respondents' negligent advice.

Respondents last performed services for appellants in 1992. In early 1993, appellants retained Sharon Shearon to prepare their 1992 tax returns. They indicated to her they "had paid to[o] much in taxes in 1989, 1990 and perhaps 1991." Shearon reviewed the returns prepared by respondents and, in August 1993, filed amended returns for tax years 1989 and 1990. She recalculated the basis (cost less depreciation) which had been attributed to various parcels, resulting in an increased basis for each of the parcels sold and corresponding reduced capital gains from the sales. With the higher basis and reduced capital gains, appellants were able to recover substantial tax refunds for 1989 and 1990.

The decreased capital gains, however, resulted in a concomitant decrease in the amount of the charitable contribution for 1990. IRC section 170(b)(1) limits charitable contributions of certain real property to 30 percent of the AGI. As a result of Shearon's recalculations, appellants' 1990 AGI decreased from approximately $150,000 as computed by Gray, to approximately $78,000. Accordingly, the amount of the charitable contribution decreased from approximately $75,000 on the initial return to approximately $23,000.

After Shearon filed the amended returns in August 1993, Shearon and the Internal Revenue Service (IRS) engaged in "protracted negotiations" which resulted in an IRS determination allowing the $23,000 tax deduction on December 23, 1994. On January 9, 1995, the IRS issued appellants a tax refund of $7,487.98 for 1990.

The trial court granted summary judgment for respondents, finding that appellants discovered facts essential to the malpractice claim and suffered actual injury in 1991. That their damages may have increased or mitigated over the course of litigation did not toll the statute. Therefore, the statute of limitations ran on appellants' malpractice claim before they filed their complaint in June 1994.

### DISCUSSION

*Standard of Review*

"Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit or that there is no defense to the action or proceeding. . . ." (§ 437c, subd. (a).) "The motion for summary judgment shall be granted if all the papers submitted show that there is no

triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence . . . and all inferences reasonably deducible from the evidence, except summary judgment shall not be granted . . . on inferences reasonably deducible from the evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact." (§ 437c, subd. (c); *Campanano* v. *California Medical Center* (1995) 38 Cal.App.4th 1322, 1327 [45 Cal.Rptr.2d 606].)

A defendant meets his or her burden on a motion for summary judgment if that party has proved there is a complete defense to the cause of action. (§ 437c, subd. (o)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists. (*Ibid.*; *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 583 [37 Cal.Rptr.2d 653].)

■ On appeal, we independently assess the correctness of the trial court's ruling, applying the same legal standard as the trial court. (*Campanano* v. *California Medical Center*, *supra*, 38 Cal.App.4th at p. 1327; *Schrader* v. *Scott* (1992) 8 Cal.App.4th 1679, 1683 [11 Cal.Rptr.2d 433].) " '[W]e construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it.' [Citations.]" (*Campanano* v. *California Medical Center*, *supra*, at p. 1327.) Resolution of a statute of limitations defense normally is a question for the trier of fact. However, summary judgment is proper if the court can draw only one legitimate inference from uncontradicted evidence regarding the limitations question. (*City of San Diego* v. *U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 582 [35 Cal.Rptr.2d 876].)

*Accountant Malpractice*

*(a) Discovery*

■ A cause of action for accountant malpractice accrues when the client discovers, or should discover, the facts essential to the malpractice claim. (*Moonie* v. *Lynch* (1967) 256 Cal.App.2d 361, 365 [64 Cal.Rptr. 55].) The "discovery rule" assumes that all conditions of accrual of the action—including harm—exist, but nevertheless postpones commencement of the limitation period until the client actually discovered his injury and its negligent cause or could have discovered injury and cause through the exercise of reasonable diligence. (*CAMSI IV* v. *Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1536 [282 Cal.Rptr. 80].)

In this case the evidence established appellants discovered the facts supporting their malpractice claim more than two years before the complaint

was filed. In September 1991, when appellants received their 1990 tax returns from respondents, they discovered they did not receive a credit against taxes equal to the fair market value of the donated property. Appellants conceded they were told in 1991 that Gray "made a mistake" and they would not receive a dollar-for-dollar tax credit for the donation of the $125,000 parcel. They filed the returns and paid taxes over and above what they expected to pay under Gray's original representation that they would receive a $125,000 tax credit if they donated the property. Accordingly, the complaint filed in June 1994 was filed more than two years after appellants discovered or should have discovered the facts supporting their malpractice claim.

Appellants contend, however, their cause of action did not accrue until December 1994 when the IRS finally determined the impact of the charitable property donation on their 1990 tax obligation and issued them a refund of $7,487.98. They assert, under *Feddersen*, the statute of limitations did not start to run until the IRS finally determined their tax obligations, therefore, their complaint is timely. Appellants misconstrue the *Feddersen* holding, which addresses the actual injury element of a professional malpractice action.

### (b) Actual Injury

■ If the allegedly negligent professional conduct does not cause damage, it generates no cause of action in tort. The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433].) If the last element to occur is the element of damage, the statute of limitations begins to run upon the occurrence of " 'appreciable and actual harm, however uncertain in amount,' " that consists of more than nominal damages. (*City of San Diego* v. *U.S. Gypsum Co.*, *supra*, 30 Cal.App.4th at p. 582; accord, *Feddersen*, *supra*, 9 Cal.4th at pp. 619-620; *Laird* v. *Blacker* (1992) 2 Cal.4th 606, 611 [7 Cal.Rptr.2d 550, 828 P.2d 691] (*Laird*); *Schrader* v. *Scott*, *supra*, 8 Cal.App.4th at pp. 1684-1685.) It is the fact of damage, rather than the amount, that is the relevant consideration. (*Adams* v. *Paul* (1995) 11 Cal.4th 583, 589 [46 Cal.Rptr.2d 594, 904 P.2d 1205].) Consequently, the client may suffer "appreciable and actual harm" before he or she sustains all, or even the greater part, of the damages occasioned by the professional negligence. (*Laird*, *supra*, 2 Cal.4th at p. 612, citing *Budd* v. *Nixen*, *supra*, 6 Cal.3d at p. 201.)

In *Feddersen*, *supra*, 9 Cal.4th 606, the court determined when "actual injury," caused by an accountant's negligent filing of tax returns, occurs so

as to commence the running of the two-year statute of limitations period of section 339, subdivision 1. The court traced the evolution of the requirement of actual injury in addition to discovery of negligence. (9 Cal.4th at p. 615.) It noted that in *Laird, supra*, 2 Cal.4th 606, 612, the Supreme Court resolved a conflict in the Courts of Appeal over whether the judgment against the plaintiff or the finality of the appeal therefrom constituted "actual injury" for statute of limitations purposes. In *Laird*, plaintiff sued her former attorney after her underlying action was dismissed for failure to timely prosecute the action. The plaintiff argued that the statute of limitations for attorney malpractice should be tolled until all appellate review had been exhausted and the result of the adverse underlying judgment was "irremediable." The Supreme Court held that the applicable statute of limitations commenced when the plaintiff had knowledge of the "fact" of damage—i.e., when the underlying action was dismissed as a result of the attorney's negligence, and not, as plaintiff argued, on finality of a subsequent appeal. (*Laird, supra*, 2 Cal.4th at p. 615.)

In *ITT Small Business Finance Corp.* v. *Niles* (1994) 9 Cal.4th 245 [36 Cal.Rptr.2d 552, 885 P.2d 965] (*Niles*), the Supreme Court considered "actual injury" in the context of "transactional" malpractice—negligent preparation of loan documents for a lender. The defendant attorney argued that the lender sustained actual injury by incurring attorney fees in the debtor's action contesting the adequacy of the loan documents. (*Id.* at pp. 248-249, 251.) The lender asserted actual injury occurred only when it settled with the debtor for less than the full value of its security. (*Id.* at pp. 249, 251.) The Supreme Court concluded, ". . . in transactional legal malpractice cases, when the adequacy of the documentation is the subject of dispute, an action for attorney malpractice accrues on entry of adverse judgment, settlement, or dismissal of the underlying action. . . ." (*Id.* at p. 258.) Thus, if the propriety of an attorney's advice is contingent on the outcome of a claim by or against the client, the client does not sustain actual injury until the claim is resolved adversely, which indicates both that the attorney erred and that the error caused harm. (*Id.* at pp. 252-253, 258; *Baltins* v. *James* (1995) 36 Cal.App.4th 1193, 1203 [42 Cal.Rptr.2d 896].)

*Feddersen* applied the reasoning of *Laird* and *Niles* to the statute of limitations governing accounting malpractice claims. There, the accountant negligently omitted from the client's 1983 and 1984 tax returns documents that were necessary for the client's favorable tax status. (*Feddersen, supra*, 9 Cal.4th at p. 609.) The returns were audited. The client learned in 1986 that it would lose its favorable tax status and that its tax liability could approximate $300,000. (*Ibid.*) As a result, the client's line of credit was reduced by $200,000, and the client had to withdraw a settlement offer in unrelated

litigation. (*Id.* at p. 610.) The client also paid attorney fees for representation during the audit process. (*Ibid.*) The audit became final as to the IRS when it assessed a deficiency and imposed penalties and interest on May 16, 1988. (*Ibid.*) The issue before the court was whether the client sustained actual injury before assessment of the tax deficiency. (*Id.* at p. 611.)

In holding that actual injury coincided with the tax deficiency assessment, the court equated the assessment to the unfavorable settlement in *Niles*. (*Feddersen, supra*, 9 Cal.4th at p. 619.) The court observed that whether the client suffered actual injury from a negligently prepared tax return was contingent on the outcome of the audit. (*Id.* at pp. 619-620.) Once the audit process terminated adversely to the client and resulted in a deficiency assessment, the harm from the alleged negligence was no longer contingent, and the cause of action accrued. (*Id.* at p. 620.) The court conceded the client may have suffered "palpable harm" from the accountant's error when the client's credit line was reduced and when the client had to withdraw the settlement offer. But, those consequences flowed only from a "*tentative assessment of potential liability.*" (*Ibid.*) The court recognized that in some cases, injury will be clear, and negative collateral consequences might arise before a determination confirms the professional's error. The court concluded, however, that its bright line rule provided certainty in the statute's application, and "uniformity in application serves a more important function when interpreting statutes of limitation than does the identification of the precise point at which some harm might be said to have occurred . . . ." (*Id.* at pp. 621-622.) In addition, the rule conserved judicial resources and avoided forcing the client to allege facts in the negligence action that could be used against him or her in the audit, without first allowing the accountant to correct the error, or mitigate the consequences thereof, during the audit process. (*Feddersen, supra*, 9 Cal.4th at p. 620.)

 Appellants' reliance on *Feddersen* is misplaced for several reasons. First, the *Feddersen* rule was expressly limited to a specific type of accountant malpractice; i.e., "the negligent preparation of tax returns." (9 Cal.4th at p. 622.) Appellants' claim is based not on negligent tax return preparation but on allegedly erroneous tax advice upon which appellants relied to their detriment.[3]

 Read together, *Feddersen, Laird*, and *Niles* hold that if the existence or effect of a professional's error depends on a litigated or negotiated

---

[3]In their original complaint, appellants expressly alleged that respondents "carelessly, neglectfully and negligently prepared the 1989 and 1990 federal and state tax returns causing [appellants] to pay far in excess of their required taxes" in addition to alleging the negligent tax advice. During a deposition, however, appellants' counsel stated for the record that his clients would move to amend their complaint to claim damages solely for the claim regarding the alleged representation that donation of the property would yield a "dollar-for-dollar offset against tax liability based on the fair market value of the asset donated. . . . As to the

determination's outcome, "actual injury" occurs only when that determination is made. (*Baltins* v. *James, supra,* 36 Cal.App.4th at p. 1196.) In other words, actual injury occurs for purposes of the statute of limitations when the client finally suffers a detriment, which is not merely potential or tentative, as a direct result of the malpractice. (*Tchorbadjian* v. *Western Home Ins. Co.* (1995) 39 Cal.App.4th 1211, 1223 [46 Cal.Rptr.2d 370].)
 Under this rule, appellants suffered actual injury either in 1990 when they unconditionally conveyed their property to the Oakdale Fire District, or in 1991 when they paid taxes in excess of the amount they expected to pay after donating their property pursuant to the erroneous tax advice.[4]

Appellants' situation is factually distinguishable from the plaintiff's in *Feddersen* in several important regards. Unlike the taxpayer in *Feddersen,* whose damages were speculative or merely potential before completion of the IRS audit, appellants suffered out-of-pocket losses in 1991. They paid more taxes than Gray told them they would have to pay if they followed his recommendation to donate property to a charitable organization. In fact, appellants had to borrow money to make those unexpected payments. The propriety of the tax advice they received from Gray was not contingent on the outcome of the IRS audit. There was nothing speculative about the damages they suffered in 1991 as a result of the alleged erroneous advice regarding the benefits of donating their property to a charitable organization. The determination by the IRS in 1994 regarding appellants' 1990 tax liability merely resolved the extent of their loss.

Further, the policy considerations underlying the *Feddersen* rule do not come into play in this case. Appellants would not have to allege facts against respondents in their negligence action that could be used against them in the IRS audit. In their malpractice action, appellants alleged respondents gave them erroneous tax advice which resulted in damages because the effect of the charitable property donation on their tax liability was not as beneficial as respondents represented it would be. On the other hand, the IRS audit addressed the amended basis calculations for the real property appellants sold in 1989 and 1990 and the resulting recalculation of their capital gains. The amended calculations only indirectly affected the value of the charitable deduction. The propriety of respondents' advice to appellants to donate the property did not depend on the outcome of the audit. The issues involved in

balance of the claims in the Complaint, those are going to be dismissed by way of the amended Complaint." In fact, before the summary judgment motion was brought, appellants filed an amended complaint limiting their claim to damages based on the alleged erroneous advice.

[4]Whether the actual injury was suffered in 1990 or in 1991 is immaterial in this case because, according to appellants' evidence, they did not discover the facts until 1991 and the statute of limitations would not start running until then.

the malpractice action and the IRS audit are different. Thus, there would be no waste of judicial resources if appellants prosecuted their malpractice action while the IRS audit was pending.

This case is more analogous to *Turley* v. *Wooldridge* (1991) 230 Cal.App.3d 586 [281 Cal.Rptr. 441], *Hensley* v. *Caietti* (1993) 13 Cal.App.4th 1165 [16 Cal.Rptr.2d 837], and *Foxborough* v. *Van Atta* (1994) 26 Cal.App.4th 217 [31 Cal.Rptr.2d 525]. In *Turley* and *Hensley*, the court found actual injury upon execution of a marital settlement agreement. In both cases, the client asserted the attorney had given inadequate advice and representation in connection with the agreement, and the ongoing dissolution proceeding gave no occasion to test the client's hypothesis that the asserted malpractice had injured the client. *Turley* involved the property-division aspects of the agreement. The Court of Appeal said: "If her claims of malpractice are true, Turley suffered actual harm when the Agreement was signed. . . ." (230 Cal.App.3d at p. 592.) By its terms, the agreement was effective on the date it was signed. Therefore, the provisions awarding Turley inadequate support and less than her share of the community property were operational on that date. At that point, her damages were not speculative, but appreciable. The fact that she could have challenged the agreement in an action for rescission or other contract relief did not affect the date she suffered actual harm. When she signed the purportedly unfair agreement on the alleged negligent advice of counsel and thereby rendered it effective, all essential elements of her cause of action for legal malpractice had occurred. (*Turley* v. *Wooldridge, supra*, at pp. 592-593.)

In *Hensley*, the plaintiff sued her attorney for inducing her to enter into an unfavorable marital settlement agreement. (*Hensley* v. *Caietti, supra*, 13 Cal.App.4th at pp. 1167-1168.) The plaintiff argued she did not sustain actual injury until the effective date of the ensuing judgment in the dissolution action. (*Id*. at pp. 1173-1174.) The court disagreed: "Negligent legal advice which induces a client to enter into a binding contract resolving marital property and support issues results in actual injury at the point of entry. Entering a contract is a jural act which alters the legal relations of the parties and creates an obligation. [Citation.]" (*Id*. at p. 1175.) The agreement operated immediately to deprive Hensley of certain property; thus, the settlement agreement marked the point at which the damage from the alleged malpractice occurred. (*Ibid.*; *Radovich* v. *Locke-Paddon* (1995) 35 Cal.App.4th 946, 977 [41 Cal.Rptr.2d 573] [plaintiff suffered actual injury when he executed prenuptial agreement and later when he reaffirmed in writing the apparent effect of the agreement].)

In a third case, *Foxborough* v. *Van Atta, supra*, 26 Cal.App.4th 217, the plaintiff employed an attorney to secure certain automatic development

rights for property it purchased. As a result of the attorney's alleged negligence, the automatic development rights expired and the plaintiff had to resort to a more expensive and uncertain process to attempt the property's development. (*Id.* at pp. 222-223, 227.) Soon after, the plaintiff sued the property's seller for not notifying it that the unrestricted development rights would expire; the plaintiff lost that suit four and a half years later. (*Id.* at p. 223.) The plaintiff contended the attorney's alleged malpractice did not cause actual injury until the plaintiff lost its suit against the seller and failed to recoup its losses. (*Id.* at p. 225.) The court found that actual injury occurred when the automatic development rights expired, stating, "when malpractice results in the loss of a right, remedy, or interest, or in the imposition of a liability, there has been actual injury regardless of whether future events may affect the permanency of the injury or the amount of monetary damages eventually incurred. [Citations.]" (*Id.* at p. 227.)

Like the plaintiffs in *Turley*, *Hensley* and *Foxborough*, appellants suffered damages when, as a result of respondents' alleged malpractice, they donated the property, lost appreciable expected tax benefits, and paid unanticipated taxes in 1991. At that point, there was actual injury regardless of the outcome of the eventual IRS audit. The bright line rule set forth in *Feddersen* simply does not apply to the facts of this case.

## DISPOSITION

Judgment affirmed. Costs to respondents.

Ardaiz, P. J., and Buckley, J., concurred.