Filed 10/6/25  Vargas v. The Liberty Company Insurance Brokers CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| BERNARDO VARGAS,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>THE LIBERTY COMPANY INSURANCE BROKERS INC.,<br><br>Defendant and Respondent. | B333603<br><br>(Los Angeles County<br>Super. Ct. No. 22STCV12269) |

APPEAL from a judgment and order of the Superior Court of Los Angeles County.  Anne Richardson, Judge.  Affirmed.

McCune Law Group, Cory R. Weck, Steven A. Haskins, Brynna D. Popka, and Andrew W. Van Litgen for Plaintiff and Appellant.

Klinedinst, David M. Majchrzak, and Amara S. Barbara for Defendant and Respondent.

_____

## INTRODUCTION

Plaintiff Bernardo Vargas appeals from the judgment of dismissal entered after the trial court sustained without leave to amend the demurrer to his second amended complaint filed by defendant The Liberty Company Insurance Brokers Inc. (Liberty). On appeal, Vargas contends the court erred in finding his claims against Liberty are barred by Code of Civil Procedure section 339's two-year statute of limitations for professional negligence claims. Alternatively, Vargas argues that the court should have applied equitable tolling principles to find he timely filed his claims against Liberty. As we explain, the court correctly found that Vargas's claims against Liberty are time-barred because he filed this lawsuit more than two years after a cause of action for professional negligence accrued and he has not pled any facts supporting application of equitable tolling principles. Accordingly, we affirm.

## BACKGROUND

### 1. Brilsilco's insurance policy

Brilsilco, Inc. (Brilsilco) manufactures and supplies podiatric and orthopedic shoe inserts. Brilsilco also operates "Brill's Shoes," a storefront that fills customers' prescriptions for shoe inserts. Liberty is an insurance broker.

Around late 2015, Brilsilco retained Liberty "to assist [] in obtaining insurance." In December 2015, Employers Mutual Casualty Company (EMCC) issued a one-year general liability policy to Brilsilco. Relevant here, the policy excluded coverage for incidents caused by Brilsilco's " 'professional services,' including 'medical, surgical, dental, X-ray, or nursing services treatment, advice or instruction.' "

2

## 2. Vargas's injuries

In late 2015, Vargas was prescribed diabetic shoes with custom-molded inserts. Vargas took his prescription to Brill's Shoes, where he consulted with the store's owner, who offered to provide Vargas a better pair of inserts than the ones Vargas previously used. Vargas told the owner that he wanted to continue wearing the same type of inserts because they were comfortable. The owner told Vargas that he could satisfy Vargas's request.

When Vargas picked up his new shoes, they included different inserts from the ones he requested. Vargas wore the new inserts, even though they were more snug and less comfortable than ones he had previously worn. After about a week of wearing the new inserts, Vargas's feet were swelling and had turned red, and a black spot appeared on his right large toe. Brill's Shoes' owner told Vargas that the store had provided him a " 'bad insert.' "

Vargas eventually developed gangrene in his right foot. In May 2016, after two unsuccessful surgeries in which he had his large right toe and part of his right foot removed, Vargas had his right leg amputated below the knee.

## 3. Prior litigation and the assignment of rights

In November 2017, Vargas sued Brilsilco, claiming his injuries were caused by defects in the shoe inserts he obtained from Brill's Shoes. EMCC initially agreed to defend Brilsilco subject to a reservation of rights under Brilsilco's insurance policy.

In early 2018, EMCC filed an action in the United States District Court for the Central District of California, seeking a declaration that it had no duty to defend or indemnify Brilsilco

3

under Brilsilco's insurance policy and that it was entitled to reimbursement for the expenses it already paid defending Brilsilco against Vargas's lawsuit. In October 2018, the district court granted summary judgment in EMCC's favor, finding Vargas's claim against Brilsilco arose out of injuries resulting from professional services offered by Brill's Shoes, which was excluded from coverage under Brilsilco's insurance policy. Vargas attached a copy of the district court's ruling to his opposition to Liberty's demurrer to his first amended complaint.

On August 6, 2021, Vargas and Brilsilco's representatives signed an agreement through which the parties agreed to submit Vargas's claims against Brilsilco to binding arbitration and Brilsilco agreed to assign to Vargas any claims the company has against EMCC, "its agents, employees, successors, assigns, subsidiaries, related entities, or others based on, arising from or related to [EMCC's] denial of coverage under the [EMCC] Liability Policy, . . . and/or the procurement of the [EMCC] Liability Policy" (Assignment). Brilsilco also agreed to assign to Vargas all claims the company "may now have or hereafter acquire against [EMCC] for its Brokers' Negligence in issuing a policy that excludes 'Professional Services.' "

In August 2021, Vargas and Brilsilco arbitrated Vargas's claims against the company. The arbitrator awarded Vargas $1.5 million in damages against Brilsilco for the injuries he suffered from wearing Brill's Shoes' defective shoe inserts.[1]

---

[1] We deny Vargas's request for judicial notice of a copy of the arbitrator's statement of decision and award, attached to which is a redacted copy of the Assignment. Both documents are already part of the appellant's appendix that Vargas filed in this case.

## 4. The underlying lawsuit

On April 12, 2022, Vargas sued Liberty for professional negligence. In November 2022, Vargas filed a first amended complaint. Vargas attached to the amended complaint a copy of the Assignment.

The trial court sustained with leave to amend Liberty's demurrer to the first amended complaint, finding Vargas's professional negligence claim was barred by Code of Civil Procedure section 339, subdivision (1)'s two-year statute of limitations because it was filed more than two years after the district court determined Brilsilco's insurance policy did not cover claims arising out of the company's professional services.

In April 2023, Vargas filed the operative second amended complaint, which alleged seven causes of action against Liberty, including professional negligence, breach of fiduciary duty, negligent misrepresentation, constructive fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. Vargas also asserted claims for declaratory relief and breach of contract against Brilsilco, alleging the company provided valueless consideration for the Assignment in the event the court finds the agreement was executed after the expiration of the statute of limitations for a professional negligence claim against Liberty.

In August 2023, Liberty demurred to the second amended complaint. Among other things, Liberty again argued that Vargas's claims against the company were time-barred.

The trial court sustained Liberty's demurrer without leave to amend. The court found that all of Vargas's claims against Liberty were governed by Code of Civil Procedure section 339, subdivision (1)'s two-year statute of limitations, because they all

arose out of the same primary right—i.e., Liberty's allegedly negligent failure to procure an insurance policy for Brilsilco that covered claims arising out of the company's professional services. The court then found that the statute of limitations began to run in October 2018, when the district court found Vargas's claims against Brilsilco were not covered by the company's insurance policy. At that point, the court explained, Brilsilco was injured by any negligent failure on Liberty's part to procure an insurance policy that covered claims arising out of Brilsilco's professional services. Because Vargas did not file his lawsuit until April 2022, more than two years after the statute of limitations began to run, all his claims against Liberty were time-barred.

The court dismissed all of Vargas's claims against Liberty and entered judgment in the company's favor.

Vargas appeals.

## DISCUSSION

We independently review a trial court's order sustaining a demurrer to determine whether the operative complaint alleges facts sufficient to state a cause of action. (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.) We assume the truth of all properly pled factual allegations and matters that are judicially noticeable and liberally construe the complaint's allegations with a view toward substantial justice. (*Ibid.*; *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 43, fn. 7.) However, if facts appearing in attached exhibits or judicially noticed documents contradict, or are inconsistent with, the complaint's allegations, we rely on the facts in the exhibits and judicially noticed documents. (*Ivanoff*, at p. 726.)

If the trial court sustained the demurrer without leave to amend, we must decide whether there is a reasonable possibility

6

that the plaintiff can amend his complaint to cure the defect. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)  If the defect can be cured, the trial court has abused its discretion, and we reverse.  (*Ibid*.)  If the defect cannot be cured, the trial court has not abused its discretion, and we affirm.  (*Ibid*.)  "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid*.)  Such a showing can be made for the first time on appeal. (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711.)

All of Vargas's claims at issue in this appeal stem from Brilsilco's assignment of its rights against Liberty to Vargas. Each of Vargas's claims against Liberty arise out of allegations that Liberty failed to obtain an insurance policy for Brilsilco that provided coverage for incidents caused by Brilsilco's professional services.  The trial court found, and Vargas does not dispute, that each of those claims sounds in professional negligence and, as a result, is governed by Code of Civil Procedure section 339, subdivision (1)'s two-year statute of limitations.  Vargas challenges only the court's finding that the limitations period for each of his claims expired by the time he filed this lawsuit.  As we explain, the court did not err in finding Vargas's claims were time-barred.

In California, the statute of limitations for a cause of action begins to run when the claim accrues, which typically is when the claim is complete with all its elements.  (*Williams v. Hilb, Rogal & Hobbs Ins. Services of California Inc.* (2009) 177 Cal.App.4th 624, 641 (*Williams*).)  A cause of action for professional negligence accrues when the plaintiff sustains damage and discovers, or should discover, the negligence.  (*Hydro-Mill Co., Inc. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.* (2004)

7

115 Cal.App.4th 1145, 1160–1161 (*Hydro-Mill*).)  For a professional negligence claim, "[i]t is the fact of damage, rather than the amount, that is the relevant consideration.  [Citation.]  Consequently, the [insured] may suffer 'appreciable and actual harm' before he or she sustains all, or even the greater part, of the damages occasioned by the professional negligence."  (*Van Dyke v. Dunker & Aced* (1996) 46 Cal.App.4th 446, 452; accord, *Hydro-Mill*, at p. 1161.)

*Hydro-Mill* is instructive for determining when the limitations period for Vargas's claims against Liberty began to run.  In *Hydro-Mill*, the plaintiff asked its insurance broker to obtain comprehensive earthquake coverage for its three business locations, two of which it leased.  (*Hydro-Mill, supra,* 115 Cal.App.4th at p. 1149.)  The broker obtained insurance coverage for only the location that the plaintiff owned.  (*Ibid.*)  A couple of days after all three buildings were damaged in the January 1994 Northridge earthquake, the plaintiff learned that it did not have insurance coverage for its two leased locations.  (*Id.* at p. 1150.)  In December 1994, the insurer offered the plaintiff a payment on its insurance claim, which excluded losses associated with the two leased locations.  (*Id.* at p. 1151.)  In February 1997, the plaintiff sued its broker for professional negligence for failing to obtain insurance coverage for its two leased locations.  (*Id.* at p. 1152.)

The plaintiff prevailed against the broker at trial, but the appellate court reversed, concluding the plaintiff's claim for professional negligence was time-barred because it was filed more than two years after the statute of limitations began to run.  (*Hydro-Mill, supra,* 115 Cal.App.4th at pp. 1161–1162.)  The court held that the limitations period began to run no later than

8

December 1994, when the insurer made it clear to the plaintiff that the losses for the two leased locations would not be covered by the plaintiff's insurance policy. (*Id.* at p. 1162.)

Applying *Hydro-Mill* here, the statute of limitations for a professional negligence cause of action against Liberty accrued in October 2018, when the district court found Brilsilco's insurance policy did not cover any incidents arising out of its professional services, including the injuries giving rise to Vargas's lawsuit against Brilsilco. By that time, Brilsilco had already tendered its defense to EMCC. Thus, once the district court found Brilsilco's insurance policy did not apply to Vargas's claim against the company, Brilsilco was on the hook for all expenses associated with defending against that claim. In other words, Brilsilco was damaged by Liberty's failure to obtain an insurance policy that included coverage for its professional services when the district court found that Brilsilco's policy did not cover Vargas's lawsuit and that EMCC had no duty to defend Brilsilco in that lawsuit. (See *Hydro-Mill, supra,* 115 Cal.App.4th at pp. 1161–1162.)

Vargas argues Brilsilco did not suffer any damages from Liberty's failure to obtain an adequate insurance policy until the arbitrator issued its decision awarding him $1.5 million against Brilsilco. To support this argument, Vargas relies on *Walker v. Pacific Indem. Co.* (1960) 183 Cal.App.2d 513 (*Walker*) and *Williams, supra,* 177 Cal.App.4th 624. As we explain, Vargas's reliance on *Williams* and *Walker* is misplaced.

In *Walker*, the insured asked his broker to obtain an insurance policy with a $50,000 limit, but the broker obtained a policy with limits of only $15,000. (*Walker, supra,* 183 Cal.App.2d at p. 515.) After the insured injured the plaintiff in an accident, the insurer accepted the defense of the plaintiff's

9

lawsuit.  (*Ibid*.)  The plaintiff was later awarded $100,000 against the insured, but the insurer paid only the $15,000 policy limit. (*Ibid*.)  The insured assigned his professional negligence claim against the broker to the plaintiff, who obtained a $35,000 jury verdict against the broker.  (*Ibid*.)

The broker appealed, arguing the plaintiff's professional negligence claim was time-barred because it accrued when the insured injured the plaintiff, and the plaintiff's claim against the broker was filed after the limitations period expired.  (*Walker*, *supra*, 183 Cal.App.2d at pp. 515–516.)  The appellate court rejected the broker's argument, reasoning that the insured did not suffer any damages from the broker's failure to obtain a policy with limits above $15,000 until the insured was subject to a judgment exceeding that amount.  (*Id*. at pp. 516–519.)  The court explained, "the shortage of liability insurance coverage exposed plaintiff's assignor, the insured, to possible liability in excess of his indemnification.  But exposure to and imposition of liability are vastly different matters.  Until judgment in the personal injury action, no liability was imposed upon the insured as to which he could allege a cause of action against the broker from whom he had ordered indemnity in excess of that furnished. While special circumstances might have created a cause of action before that judgment, none are before us on this appeal."  (*Id*. at p. 519.)

In *Williams*, the plaintiffs owned a business that installed spray-linings on pickup trucks.  (*Williams*, *supra*, 177 Cal.App.4th at pp. 627–628.)  They sued their insurance broker for failing to procure an insurance policy that included workers' compensation coverage, after an employee who was injured in a fire at the plaintiffs' business obtained a verdict

10

against the plaintiffs that exceeded their $1 million insurance policy limit. (*Id*. at pp. 629–630.) The plaintiffs prevailed against the broker following a bench trial. (*Id*. at pp. 630–635.)

On appeal, the reviewing court rejected the broker's argument that the statute of limitations for the plaintiffs' professional negligence claim began to run when the employee was injured in the fire. (*Williams*, *supra*, 177 Cal.App.4th at pp. 641–642.) Relying on *Walker*, the court noted that the plaintiffs were defended by their insurer throughout the entirety of the injured employee's litigation, and they ultimately were indemnified for up to the $1 million limit of their insurance policy. (*Williams*, at pp. 641–642.) Until the judgment was entered against the plaintiffs, they could have prevailed against the injured employee or the jury could have awarded the injured employee damages that did not exceed the plaintiffs' policy limit. (*Id*. at p. 642.) Thus, the plaintiffs were not injured by their broker's negligence in procuring an inadequate insurance policy until a judgment exceeding the policy's limit was entered against them. (*Ibid*.)

*Walker* and *Williams* are distinguishable. Unlike the professional negligence causes of action in those cases, Vargas's claims in this case are not based on a theory that Liberty procured an insurance policy for Brilsilco with insufficient policy limits. Instead, Vargas's claims are premised on a theory that Liberty failed to procure an insurance policy that provided *any* coverage for claims arising out of Brilsilco's professional services, such as the type of claim at issue in Vargas's lawsuit against Brilsilco. Once the district court found that Vargas's lawsuit arose out of Brilsilco's professional services, EMCC had no duty to defend Brilsilco and Brilsilco was responsible for any expenses

11

associated with its defense in that lawsuit. In other words, Brilsilco should have discovered, and would have been harmed by, Liberty's negligence the moment the district court found Brilsilco's insurance policy provided no coverage against Vargas's lawsuit.

Vargas next contends that even if the statute of limitations began to run in October 2018, the trial court should have applied equitable tolling principles applicable to claims brought by insureds against insurers to find the limitations period for his claims against Liberty had not expired by the time he filed this lawsuit. This argument lacks merit.

When an insured sues an insurer, the statute of limitations is tolled from when the insured files a timely claim with the insurer until the insurer formally denies the claim in writing. (*Prudential-LMI Com. Insurance v. Superior Court* (1990) 51 Cal.3d 674, 678.) As our Supreme Court explained, this rule furthers public policy: "First, it allows the claims process to function effectively, instead of requiring the insured to file suit *before* the claim has been investigated and determined by the insurer. Next, it protects the reasonable expectations of the insured by requiring the insurer to investigate the claim without later invoking a technical rule that often results in an unfair forfeiture of policy benefits. Although an insurer is not required to pay a claim that is not covered or to advise its insureds concerning what legal arguments to make, good faith and fair dealing require an insurer to investigate claims diligently before denying liability. [Citation.] Third, a doctrine of equitable tolling will further our policy of encouraging settlement between insurers and insureds, and will discourage unnecessary bad faith suits that are often the only recourse for indemnity if the insurer

12

denies coverage after the limitation period has expired." (*Id*. at p. 692.)

As the court in *Hydro-Mill* explained, this tolling principle is justified by factors that are specific to an insurer's processing of an insured's claim. (*Hydro-Mill*, *supra*, 115 Cal.App.4th at p. 1163.) "The insurance policy requires an insured to submit a timely claim, which is then investigated by the insurer. It would make little sense to require an insured to file suit against an insurer before the investigation is completed and the insured notified of the result." (*Id*. at pp. 1163–1164.)

The same factors do not support applying equitable tolling principles to a professional negligence claim against an insurance broker, however. That is because an insured's cause of action against a broker does not involve the processing of a claim. (*Hydro-Mill*, *supra*, 115 Cal.App.4th at p. 1164.) Rather, an insured becomes aware of the existence of its cause of action against a broker the moment the insured discovers its claim for coverage falls outside the scope of the insurance policy that the broker procured. (*Ibid*.) At that point, there is no need for further investigation because all the elements of a cause of action for professional negligence against the broker—wrongful conduct, causation, and harm—have been satisfied. (*Ibid*.)

Here, Vargas does not point to any factors that support applying equitable tolling principles to his claims against Liberty. For the reasons explained above, Brilsilco should have become aware of all the elements of a claim for professional negligence against Liberty when the district court found that the insurance policy Liberty procured for Brilsilco did not cover claims arising out of Brilsilco's professional services. Although Brilsilco may not have been aware at that time of the full extent of the damages it

13

suffered from Liberty's failure to procure an adequate insurance policy, Brilsilco had every reason to know that Liberty failed to procure an adequate insurance policy and that it had been harmed by Liberty's failure to do so. (See *Hydro-Mill*, *supra*, 115 Cal.App.4th at p. 1161 [the fact of damage, not the amount, is the relevant consideration for determining when a cause of action accrues].)

In short, the court did not err in finding all of Vargas's claims against Liberty are governed by Code of Civil Procedure section 339's two-year statute of limitations and that the limitations period expired before Vargas filed this lawsuit. Because Vargas makes no attempt to explain how he could allege additional facts to show his claims are not time-barred, the court did not abuse its discretion in denying Vargas leave to amend his second amended complaint. (See *Blank*, *supra*, 39 Cal.3d at p. 318.)

Because we conclude the court did not err in sustaining without leave to amend Liberty's demurrer to Vargas's second amended complaint, we need not address Liberty's remaining arguments asking us to affirm the trial court's order.

## DISPOSITION

The judgment is affirmed. Liberty shall recover its costs on appeal.

VIRAMONTES, J.

WE CONCUR:


STRATTON, P. J.


WILEY, J.

14