[No. H029782. Sixth Dist. Sept. 25, 2007.]

FRED SAHADI et al., Plaintiffs and Appellants, v.
RAYMOND E. SCHEAFFER et al., Defendants and Respondents.

COUNSEL

Sideman & Bancroft, Donald J. Putterman, Constance J. Yu; Eisenberg & Hancock and Jon B. Eisenberg for Plaintiffs and Appellants.

Murphy, Pearson, Bradley & Feeney, Arthur V. Pearson, Joan E. Low; Law Offices of Daniel U. Smith and Daniel U. Smith for Defendants and Respondents.

OPINION

**DUFFY, J.**—Accounting malpractice actions are governed by a two-year statute of limitations under Code of Civil Procedure section 339, subdivision 1.[1] Courts have construed the statute as requiring commencement of the suit no later than two years after the client discovered (or reasonably should have discovered) the accountant's negligence, and has suffered actual injury resulting from that negligence. *International Engine Parts, Inc. v. Feddersen & Co.* (1995) 9 Cal.4th 606 [38 Cal.Rptr.2d 150, 888 P.2d 1279] (*Feddersen*) concerned the accrual of the statute of limitations for an accountant's negligent preparation of tax returns. The Supreme Court in *Feddersen* held that where the client, after being audited, is determined by the Internal Revenue Service (IRS) to owe additional taxes, the two-year statute of limitations does not commence—i.e., the client-taxpayer does not sustain actual injury—until the IRS has made a final determination that there is a tax deficiency. The case before us tests the limits of *Feddersen*. We must decide whether the statute of limitations for accounting malpractice (negligent preparation of income tax returns) commences at the conclusion of the audit, where the IRS *tentatively* concludes that substantial additional taxes, interest, and penalties are owed but later makes a final determination that there is *no* tax deficiency.

Appellants Fred Sahadi and Helen Sahadi (collectively the Sahadis) retained respondents Raymond E. Scheaffer (Scheaffer) and the accounting firm of Abbot, Stringham & Lynch, Inc. (Accounting Firm), to prepare and file their federal and state income tax returns.[2] Separate audits of the Sahadis' tax returns by the state Franchise Tax Board (FTB) and the IRS thereafter commenced in 1993 and 1994, respectively. The state tax audit concluded with the FTB's issuing a notice of action assessing additional taxes for 1991 of $618,055. The IRS in January 1997 notified the Sahadis of a proposed

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

[2] Scheaffer and Accounting Firm are collectively referred to as Accountants.

deficiency assessment of $35 million (including taxes, interest, and penalties). The Sahadis challenged the proposed tax deficiency assessment in protracted proceedings before the IRS. In a remarkable reversal of fortune, occurring after more than five years of negotiation, the IRS formally withdrew the proposed deficiency assessment and determined that the Sahadis were entitled to a substantial refund.

The Sahadis brought a negligence suit against Accountants on October 10, 2003, less than two years after the IRS formally withdrew its proposed tax deficiency assessment. In bifurcated trial proceedings, the court concluded the action was barred by the applicable statute of limitations and entered judgment in Accountants' favor. The Sahadis appeal from that judgment. They claim that under *Feddersen, supra,* 9 Cal.4th 606, the statute of limitations on their malpractice claim was tolled until the audit process was concluded by the IRS's formal withdrawal of its proposed tax deficiency assessment. The Sahadis contend that the action was timely because their accounting malpractice suit was filed within two years of that formal withdrawal.

We conclude that the court below erred in concluding that the Sahadis' claims were time-barred. Under *Feddersen, supra,* 9 Cal.4th 606, the two-year statute of limitations under section 339, subdivision 1 commenced when the IRS administrative appeal process was concluded with the formal withdrawal of the proposed tax deficiency assessment. Since the audit process formally concluded when an agreement settling the issues in the audit with no tax deficiency was executed by the Sahadis and the IRS in August 2002, less than two years prior to the initiation of this action, the statute of limitations had not run. Accordingly, we will reverse the judgment.

## FACTUAL BACKGROUND[3]

The Sahadis retained Scheaffer's former accounting firm, Weber Sanford & Co., in April 1992 to prepare their 1991 federal and state income tax returns. They filed their 1991 returns, prepared by Scheaffer, on April 15, 1992. The returns reflected federal and state tax liabilities of $400,794 and $1,828,130, respectively. The Sahadis filed amended 1991 tax returns, prepared by Scheaffer, on May 12, 1992; the federal and state tax liabilities reported— reflecting a reduction from the amounts listed on the original returns—were $224,209 and $1,018,785, respectively. On April 10, 1993, the Sahadis filed second amended 1991 tax returns that had been prepared by Scheaffer, then

---

[3] For purposes of the trial court's consideration of Accountants' statute of limitations defense only, the parties entered into a written stipulation of facts. The factual background recited here is taken almost entirely from that stipulation.

employed by Accounting Firm. The second amended returns reported federal and state tax liabilities of zero, based upon a reduction in the stated fair market values of certain properties.

A major issue confronting the Sahadis and Scheaffer in the preparation of the 1991 returns—and a major subject of the subsequent audits of those returns—was the tax treatment of a complicated transaction that had occurred in January 1991 in which the Sahadis transferred their ownership interest in The Pruneyard (a complex consisting of a highrise office building, shopping center, and hotels in Campbell, California) to their lender through a deed in lieu of foreclosure. That issue turned on the Sahadis' insolvency when the transfer occurred, and, more specifically, the amount of that insolvency as determined largely by the fair market values of their property, including The Pruneyard, and the amount of the debt forgiven as a result of the deed-in-lieu transfer.

On June 3, 1993, the FTB commenced its audit of the Sahadis' 1989 through 1991 tax returns. On January 3, 1996, the FTB issued a document entitled "Notice of Action on Cancellation, Credit, or Refund" (notice of action) in which it determined that there was $618,055 in additional tax due (exclusive of interest). The Sahadis then retained Attorney Richard Greene, who filed an appeal of the FTB assessment on April 1, 1996. The state Board of Equalization rejected the Sahadis' FTB appeal in November 1996 because they had not paid the full tax assessment; the Board of Equalization advised the Sahadis to pay the assessment and then file a claim for refund. The Sahadis paid the assessment in installments between 1997 and 2002. After commencing payments, the Sahadis submitted a claim for refund with the FTB. On April 17, 2000, the FTB notified the Sahadis in response to their refund claim that because there was an appeal pending with the IRS, and "[s]ince the issue pending resolution is the same, we will suspend our examination pending the outcome of the IRS appeal."

On September 28, 1994, the IRS announced that it was auditing the Sahadis' 1991 income tax return. The IRS agent conducting the audit wrote several letters to Scheaffer in April 1996. In an information document request of April 19, 1996, the IRS agent stated: "In December you offered to provide your position on this issue. Since you have not provided anything, even after my third request in January, the issue will be audited." On April 25, 1996, the agent confirmed that Scheaffer had not submitted appraisals for any of the Sahadis' property, noting: "Now is the time to submit your appraisals." And on April 30, 1996, the agent wrote that Scheaffer had delayed the audit and had not responded to the agent's requests for various pieces of information.

On January 28, 1997, the IRS completed its examination of the Sahadis' tax returns, and in two revenue agents reports (or "30-day letters"), the IRS indicated proposed deficiencies (taxes, penalties, and interest) of $31 million (for tax years 1990–1992), and of $4 million (for 1993–1995). The reports included criticisms of Scheaffer for failing to (1) provide information the IRS had requested, and (2) offer support for tax positions he had asserted during the audit process.[4]

In February 1997, the Sahadis retained the law firm of Heller, Ehrman, White & McAullife (Heller Ehrman), as well as other tax, appraisal, and accounting professionals, to challenge the tax deficiencies proposed by the IRS. On March 31, 1997, Heller Ehrman filed a protest on behalf of the Sahadis to the IRS's proposed tax deficiency. By March 31, 1998, Accountants were no longer providing services to the Sahadis, who engaged other tax professionals to prepare their 1997 income tax returns.

In May 2002, the IRS administrative appeal process concluded with the IRS issuing an appeals audit statement and a form 870 (an IRS document used to settle cases with taxpayers).[5] The appeals audit statement reflected that there were no tax deficiencies owed by the Sahadis and that there were net operating loss carryovers that would result in the subsequent issuance of substantial tax refunds. The Sahadis signed that form 870 on May 28, 2002, and the IRS countersigned the document on August 9, 2002.

On December 23, 2002, the FTB advised the Sahadis, through Heller Ehrman, that it was "closing the 1991 and 1996 claims [of the Sahadis] and allowing them in full." The FTB noted in its letter that it had "followed all of the adjustments made by the [IRS] during the appeal."

---

[4] The proposed tax deficiency assessment was based in part on the IRS's appraisal of The Pruneyard as of January 1991 (when the Sahadis transferred the property to their lender) at $59.1 million, an amount that was substantially higher than the value stated on the Sahadis' tax returns. Another audit issue concerned the costs of construction of a luxury condominium complex in Lake Tahoe known as Fleur de Lac, including the documentation of those costs necessary to support net operating losses for the project reported on the Sahadis' tax returns.

[5] "On concluding an office or field examination, the IRS invites the taxpayer to agree with the examiner's findings by executing Form 870 (Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment) . . . . By signing Form 870, a taxpayer authorizes the IRS to assess the agreed deficiency and collect the resulting taxes without issuing a statutory notice of deficiency (90-day letter) under [Internal Revenue Code section] 6213(a). The IRS also uses Form 870 to indicate its acceptance of a claim for refund, in which case the refund [will be] processed without further formality." (Bittker & Lokken, Federal Taxation of Income, Estates and Gifts (2007) § 112.1.A2, fns. omitted [2007 WL 2325545, at p. *1].)

## CHRONOLOGY

To facilitate our discussion below concerning Accountants' statute of limitations defense, we present a chronology of potentially relevant events here:

| | |
|---|---|
| **04/15/92** | Scheaffer files the Sahadis' 1991 tax returns. |
| **05/12/92** | Scheaffer files the Sahadis' amended 1991 tax returns. |
| **04/10/93** | Accountants file the Sahadis' second amended 1991 tax returns. |
| **06/03/93** | FTB commences audit of the Sahadis' 1989 through 1991 tax returns. |
| **__/__/93** | The Sahadis lose Cardiff Stud Farm property through foreclosure, allegedly as a consequence of imposition of FTB tax liens. |
| **09/28/94** | IRS commences audit of the Sahadis' 1991 tax returns. |
| **01/03/96** | FTB issues notice of action assessing additional tax for 1991 of $618,055. |
| **04/01/96** | Attorney Greene files appeal with FTB on the Sahadis' behalf. |
| **01/28/97** | IRS concludes audit and issues "30-day letter" with proposed tax deficiency assessment of $35 million (taxes, penalties, interest). |
| **02/__/97** | The Sahadis retain Heller Ehrman to challenge proposed deficiency assessment. |
| **03/31/97** | The Sahadis challenge proposed IRS tax deficiency assessment. |
| **03/31/98** | Accountants no longer have professional relationship with the Sahadis. |
| **05/28/02** | The Sahadis sign form 870 generated by IRS. |
| **08/09/02** | IRS signs form 870, withdrawing proposed tax deficiencies for tax years 1990–1995 and determining the Sahadis' entitlement to tax refund. |
| **12/23/02** | FTB allows the Sahadis' claim for refund in full, following all adjustments made by the IRS during the appeal. |
| **10/10/03** | The Sahadis file superior court action. |

## PROCEDURAL HISTORY

The Sahadis filed suit against Accountants on October 10, 2003. They alleged claims for professional negligence, breach of contract, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, fraud, and unjust enrichment.

The Sahadis averred in the complaint that Accountants represented that they were sophisticated professionals "with specialized 'experience dealing with many taxing authorities.' " The complaint alleged further that Scheaffer represented to the Sahadis "that he was particularly qualified to perform accounting functions for highly-sophisticated business transactions and tax returns because of his prior employment with the IRS . . . [, and] that he was particularly skilled in representing clients should there be an audit of a client's tax returns because of his knowledge, as a former IRS agent, about the tax audit process." The Sahadis relied on these representations in making the decision to retain Accountants.

The Sahadis alleged in the complaint that Accountants were negligent in that they failed to (1) "adequately and professionally document[] and substantiate[] [the Sahadis'] tax returns"; (2) "maintain files concerning [the Sahadis'] tax returns sufficient to respond adequately to an FTB or IRS audit"; and (3) " 'properly represent' [the Sahadis] before the tax agencies, [and] in many instances *refused* to provide information requested by tax agencies precisely because they knew that, as a result of their own inadequate, negligent performance of services, they could not provide the requested information." As a result of Accountants' negligence (the Sahadis alleged), the IRS made conclusions adverse to the tax positions taken in the Sahadis' returns that had been prepared by Accountants, and the IRS issued proposed deficiency adjustments and penalties totaling more than $35 million. The complaint averred that the Sahadis retained counsel and other tax and accounting professionals beginning in February 1997 (and concluding in August 2002) to assist them in handling an administrative appeal with the IRS brought on by Accountants' mishandling of the audit. The Sahadis claimed that as a result of Accountants' negligence, they had sustained damages of almost $2.3 million in out-of-pocket costs, together with additional emotional distress and economic losses "because of the tax liens needlessly filed against [them]." These economic damages, according to the Sahadis' trial brief, included over $2 million in damages resulting from the " 'fire sale' " loss through foreclosure of their thoroughbred horse breeding farm, the Cardiff Stud Farm in Paso Robles; this foreclosure allegedly resulted from FTB tax liens having been placed against their property.

Accountants filed a motion for summary judgment in which their primary argument was that the action was time-barred because the Sahadis were

aware of the alleged negligence and had sustained damage more than two years before they filed suit. In June 2004, the court (John F. Herlihy, J.) denied Accountants' motion for summary judgment. In its ruling, the court applied *Feddersen, supra*, 9 Cal.4th 606, with respect to whether claims based on the negligent preparation of tax returns were time-barred.

The case proceeded to trial in October 2005. The parties stipulated to bifurcation and to an initial trial of Accountants' motion in limine that the action was time-barred. After receiving voluminous papers and following lengthy oral argument, the court (Leslie C. Nichols, J.) issued a notice of intended decision that "[d]efendants have carried their burden of proof on the affirmative defense of the statute of limitations." Judgment was thereafter entered on December 15, 2005. The Sahadis filed a timely appeal from the judgment.

## DISCUSSION

### I. *Issue on Appeal*

The overall issue on appeal is whether the trial court erred in granting Accountants' motion in limine establishing that the Sahadis' claims were barred by the statute of limitations. We believe the legal question critical to disposition of this case to be as follows: The Supreme Court has held that the two-year statute of limitations commences in an accounting malpractice case involving negligently prepared tax returns when the IRS assesses a deficiency at the conclusion of the audit process. (*Feddersen, supra*, 9 Cal.4th at pp. 620–621.) The Sahadis contend that the action was timely filed because the two-year statute did not commence until August 9, 2002, when the IRS made its final determination that no deficiency was owing; this was the finalization of the audit process discussed in *Feddersen*. Does the *Feddersen* rule apply in this context, where the IRS—after initially making a preliminary determination that there was a tax deficiency—ultimately concludes that there is no deficiency?

### II. *Standard of Review*

Questions concerning whether an action is barred by the applicable statute of limitations are typically questions of fact. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112 [245 Cal.Rptr. 658, 751 P.2d 923].) But when "the relevant facts are not in dispute, the application of the statute of limitations may be decided as a question of law. [Citation.]" (*Feddersen, supra*, 9 Cal.4th at pp. 611–612.) Thus, for instance, a court recently reversed the trial court's exclusion of evidence of instances of domestic violence occurring more than three years before the filing of the complaint on the ground that a suit on

them was time-barred: "It is a question of law whether a case or a portion of a case is barred by the statute of limitations, and we are not bound by the trial court's determination and instead conduct a de novo review. [Citation.]" (*Pugliese v. Superior Court* (2007) 146 Cal.App.4th 1444, 1448 [53 Cal.Rptr.3d 681]; see also *City of Saratoga v. Hinz* (2004) 115 Cal.App.4th 1202, 1212 [9 Cal.Rptr.3d 791] [de novo review after in limine motion granted on basis that the plaintiff's challenge to validity of special assessment district was time-barred].)

Here, the facts relevant to Accountants' statute of limitations defense are not in dispute. The parties are in agreement with the facts presented in the time line, *ante*. For example, there can be no question that the Sahadis (1) were aware of a significant problem with their tax returns by no later than 1997 when the IRS proposed a deficiency assessment of $35 million and they were informed of various issues that the IRS had with obtaining information from Scheaffer during the audit process;[6] (2) incurred expenses related to Accountants' alleged negligence by no later than February 1997 when they retained counsel to challenge the IRS's proposed deficiency assessment; (3) concluded the administrative appeal process with the IRS audit by August 2002, when the IRS signed the form 870 agreement; and (4) filed suit on October 10, 2003. As we discuss, *post*, resolution of this case turns on the interpretation of the Supreme Court's decision in *Feddersen*, *supra*, 9 Cal.4th 606—specifically, its conclusion regarding the time that the client suffers "actual injury" in the context of an accountant's negligent preparation of income tax returns—not on weighing or drawing any conclusions from material facts in dispute. Accordingly, the question is one of law.

### III. Applicable Law Regarding Statute of Limitations

#### A. Code of Civil Procedure Section 339, Subdivision 1

▮ The two-year statute of limitations prescribed by section 339, subdivision 1[7] applies to actions for accounting malpractice. (*Curtis v. Kellogg & Andelson* (1999) 73 Cal.App.4th 492, 499 [86 Cal.Rptr.2d 536]; *Moonie v.*

---

[6] In a letter received by the Sahadis' attorneys, Heller Ehrman, on April 17, 1997, the IRS auditor advised that Scheaffer had "refused to substantiate this transaction," "declined to even explain how this project's costs were calculated," and had "suspended this audit for months."

[7] "Within two years: 1. An action upon a contract, obligation or liability not founded upon an instrument of writing, except as provided in Section 2725 of the Commercial Code or subdivision 2 of Section 337 of this code; or an action founded upon a contract, obligation or liability, evidenced by a certificate, or abstract or guaranty of title of real property, or by a policy of title insurance; provided, that the cause of action upon a contract, obligation or liability evidenced by a certificate, or abstract or guaranty of title of real property or policy of title insurance shall not be deemed to have accrued until the discovery of the loss or damage suffered by the aggrieved party thereunder." (§ 339, subd. 1.)

*Lynch* (1967) 256 Cal.App.2d 361, 362 [64 Cal.Rptr. 55].) And where the gravamen of the case is accounting negligence, the two-year statute is applicable, notwithstanding the existence of other claims against the professionals, such as misrepresentation, for which a different statute of limitations might otherwise apply. (*Ventura County Nat. Bank v. Macker* (1996) 49 Cal.App.4th 1528, 1531 [57 Cal.Rptr.2d 418].)

■ The two-year statute of limitations under section 339, subdivision 1 commences "when (1) the aggrieved party discovers the negligent conduct causing the loss or damage and (2) the aggrieved party has suffered actual injury as a result of the negligent conduct." (*Apple Valley Unified School Dist. v. Vavrinek, Trine, Day & Co.* (2002) 98 Cal.App.4th 934, 942 [120 Cal.Rptr.2d 629] (*Apple Valley*), citing *Feddersen, supra,* 9 Cal.4th at pp. 613–614.) The first component involves the discovery rule, under which "the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her. . . . [Citation.] A plaintiff need not be aware of specific 'facts' necessary to establish the claim . . . . So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her." (*Jolly v. Eli Lilly & Co., supra,* 44 Cal.3d at pp. 1110–1111, fn. omitted.)

The second element—when the client has suffered actual injury as a result of the accountant's negligence—is founded upon the premise that there must be injury as well as actionable conduct to support a claim of negligence. As the Supreme Court explained in the legal malpractice context, "If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.] Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice." (*Budd v. Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433], fn. omitted.)

This second element of actual injury—which is the element in controversy here—was the focus of the Supreme Court in *Feddersen, supra,* 9 Cal.4th 606. As background for understanding the court's decision in *Feddersen,* we will take a brief detour to explain the procedures involved in IRS audits of tax returns.

B. *IRS Audit Procedure*

The Supreme Court in *Feddersen* provided an overview of the procedures involved in the IRS's examination of tax returns. We quote from that opinion here at length:

"Once a federal tax return is selected for audit, the examination is performed by an IRS examiner. At the conclusion of the examination, the taxpayer is sent a report of the examiner's findings, indicating any proposed deficiency assessments. If the taxpayer agrees with the findings of the examiner, he or she will sign the appropriate forms (form No. 4549 and/or form No. 870) acknowledging the tax liability. [Citation.] If the taxpayer signs the agreement form, he or she immediately (1) waives the required statutory notice of deficiency pursuant to Internal Revenue Code section 6212 (the 90-day letter), (2) waives the corresponding prohibition on collection for 90 days under Internal Revenue Code section 6213, and (3) is thereafter precluded from litigating the proposed deficiency in tax court. [Citations; see fn. 5, *ante.*] If the taxpayer does not agree with the examiner's proposed findings, the findings will be reviewed in the district office, and the taxpayer will be sent a '30-day letter' instructing that the taxpayer has 30 days to file a protest. [Citation.] 'If the taxpayer fails to respond within the thirty days, a notice of deficiency will be issued. [Citation.] If the taxpayer timely files a protest, he [or she] will be accorded an appeals office conference . . . . If a settlement is reached, the taxpayer will again be requested to sign the agreement form [870] . . . . A determination by the appeals office, however, is final insofar as the taxpayer's appeal rights within the IRS [are concerned], and if the taxpayer continues to disagree, the statutory notice of deficiency will be sent giving the taxpayer ninety days to file a petition in the Tax Court before collection actions are begun.' [Citation.]

"Thus, the preliminary findings of the tax examiner are *proposed* findings that are subject to negotiation prior to any determination of tax deficiency. [Citation.] Once a deficiency is assessed, however, either by the taxpayer's consent to deficiency assessment, or by receipt of a final deficiency notice pursuant to Internal Revenue Code section 6212 et seq., the matter is final as to the IRS and subject to legal appeal in federal tax court. [Citation.]" (*Feddersen, supra,* 9 Cal.4th at pp. 612–613.)

C. Feddersen

In *Feddersen*, the clients (parent and subsidiary corporations) sued their accountants for negligence in connection with the preparation of tax returns that were subsequently audited by the IRS. The tax issue concerned whether the subsidiary was qualified for certain tax benefits associated with being a

domestic international stock corporation (DISC). (*Feddersen, supra,* 9 Cal.4th at p. 609.) The subsidiary's president was advised by an IRS agent in 1986, two years into the IRS audit of the company's tax returns, that the company would be disqualified as a DISC because the accountants had failed to provide essential documentation. (*Ibid.*) Faced with the prospect of additional tax liability in the range of $300,000, in July 1986, the subsidiary withdrew a settlement offer it had made in unrelated litigation. (*Id.* at pp. 609–610.) At the same time, the company's bank decreased its line of credit because of the potential additional tax liability. (*Id.* at p. 610.) The IRS issued a preliminary audit report in June 1987 in which it stated that it planned to disqualify the subsidiary as a DISC and that it intended to impose tax deficiencies, interest, and penalties. (*Ibid.*) The audit was finalized and the IRS assessed the deficiency on May 16, 1988, and the plaintiffs filed suit against their accountants on May 15, 1990. (*Ibid.*)

The defendants moved for summary judgment on the basis that the case was time-barred. (*Feddersen, supra,* 9 Cal.4th at p. 610.) They argued that the two-year statute ran in 1988 because it commenced in July 1986, when the subsidiary sustained actual injury by being forced to withdraw its settlement offer in the unrelated litigation and by having its line of credit reduced. (*Ibid.*) The defendants also argued that the plaintiffs' payment of attorney fees in connection with the audit constituted actual injury for purposes of commencing the statute of limitations. (*Ibid.*) The plaintiffs responded that their suit was timely under section 339, subdivision 1 because it was filed within two years after the IRS assessed the deficiency. (9 Cal.4th at p. 611.) The trial court granted the defendants' motion and the appellate court affirmed. (*Ibid.*)

The Supreme Court reversed. It created a special bright-line rule for accounting malpractice for the negligent preparation of tax returns that are subsequently audited by taxing authorities. The court held that the date in which the IRS makes a final determination of a tax deficiency serves by operation of law as the date of accrual of the statute of limitations in such cases, noting: "The deficiency assessment serves as a *finalization* of the audit process and the commencement of actual injury because it is the trigger that allows the IRS to collect amounts due and the point at which the accountant's alleged negligence has caused harm to the taxpayer." (*Feddersen, supra,* 9 Cal.4th at p. 617.)[8] The *Feddersen* court thus held that the action was timely filed: "[I]n the present case, actual injury occurred when the IRS issued its

---

[8] In a strongly worded concurring and dissenting opinion, Justice Kennard disagreed that "actual injury" occurred only when the IRS made its deficiency assessment, concluding "that [the] plaintiffs suffered appreciable and actual harm for purposes of the statute of limitations when they incurred any nontrivial audit-related costs as a result of [the defendants'] negligence in preparing [the] plaintiff's tax returns." (*Feddersen, supra,* 9 Cal.4th at p. 627 (conc. & dis. opn. of Kennard, J.).) But she agreed with her colleagues that the action was not time-barred

penalty tax assessment on May 16, 1988, rather than when [the subsidiary] withdrew its settlement offer in an unrelated lawsuit, or when the company's bank reduced its line of credit by $200,000 in anticipation of [the subsidiary's] potential tax liability. Although these two latter events may represent palpable harm caused by the malpractice of the accountant, they are based on a *tentative* assessment of *potential liability* only. Although [the defendants'] alleged negligence may have been 'discovered' during the audit, such potential liability could not amount to actual harm until the date of the deficiency tax assessment or finality of the audit process." (9 Cal.4th at p. 620.)

The Supreme Court has subsequently (in a legal malpractice case) stated that *Feddersen* involved "very narrowly drawn circumstances" and "did not articulate a 'rule for all seasons.' " (*Adams v. Paul* (1995) 11 Cal.4th 583, 588 [46 Cal.Rptr.2d 594, 904 P.2d 1205] (lead opn. of Arabian, J.) (*Adams*).) Echoing this view, the court in *Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 763 [76 Cal.Rptr.2d 749, 958 P.2d 1062] (*Jordache*)—another legal malpractice case (see pt. IV.B.4. of the Discussion, *post*)—stated that "*Feddersen* presented specialized circumstances and did not articulate a rule of broad or general applicability." But it nonetheless did not overrule or question *Feddersen*'s holding. (*Jordache, supra,* at p. 764, fn. 10 [noting that, because *Feddersen* was decided under § 339, subd. 1, and not under § 340.6, and because it was not intended to provide rules for legal malpractice actions, "we have no occasion in this case to reexamine *Feddersen*'s rationale or rule"].)

There have been only three reported California decisions since *Feddersen* was decided that have addressed the *Feddersen* rule in the context of an action for accounting malpractice. (See *Apple Valley, supra,* 98 Cal.App.4th 934 [accountants' misrepresentations in audit report; *Feddersen* not applicable, rejecting client municipality's contention that statute was tolled until there was final determination by State Controller that it was responsible for repaying funds expended in reliance upon accountant's misrepresentations]; *Curtis v. Kellogg & Andelson, supra,* 73 Cal.App.4th 492 [accounting and legal malpractice action in which client, medical corporation, was advised to and did pay excessive compensation to physician's wife]; *Van Dyke v. Dunker & Aced* (1996) 46 Cal.App.4th 446 [53 Cal.Rptr.2d 862] (*Van Dyke*) [negligent tax advice concerning deductibility of charitable contribution; claim accrued when client filed return thereby learning that advice was erroneous].) None of those cases involved circumstances similar to those found here. And only one of the cases concerned the accrual of the statute of limitations where allegedly negligent tax advice given by the accountant was followed by an

for a different reason, i.e., because the accountants continued to represent the plaintiffs in the IRS audit process. (*Id.* at p. 624 (conc. & dis. opn. of Kennard, J.).)

income tax audit scrutinizing the subject of that advice. (See *Curtis v. Kellogg & Andelson, supra,* 73 Cal.App.4th 492.)

Courts in a number of other jurisdictions have held that the statute of limitations for accounting malpractice involving the negligent preparation of tax returns commences when there is a formal assessment of a deficiency by the taxing authority. (See Annot., Application of Statute of Limitations to Actions for Breach of Duty in Performing Services of Public Accountant (1992) 7 A.L.R.5th 852, 917–920, § 24(a), and cases cited.) These cases include those that preceded *Feddersen* and others that were decided after *Feddersen* and which agreed with the conclusion of the California Supreme Court. (See, e.g., *Thomas v. Cleary* (Alaska 1989) 768 P.2d 1090 [reversing damage award where there had been no deficiency assessment; no accounting malpractice claim had accrued]; *CDT v. Addison, Roberts & Ludwig* (Ct.App. 2000) 198 Ariz. 173 [7 P.3d 979] [adopting *Feddersen* rule in context of sales tax deficiency assessment by California State Board of Equalization]; *Streib v. Veigel* (1985) 109 Idaho 174 [706 P.2d 63]; *Leonhart v. Atkinson* (1972) 265 Md. 219 [289 A.2d 1]; *Feldman v. Granger* (1969) 255 Md. 288 [257 A.2d 421] [receipt of deficiency notice marked latest date of accrual of statute of limitations]; *Snipes v. Jackson* (1984) 69 N.C.App. 64 [316 S.E.2d 657]; *LaMure v. Peters* (1996) 1996 NMCA 99 [122 N.M. 367, 924 P.2d 1379]; *Chisholm v. Scott* (1974) 86 N.M. 707 [526 P.2d 1300]; *Gray v. Estate of Barry* (1995) 101 Ohio App.3d 764 [656 N.E.2d 729]; *Sladky v. Lomax* (1988) 43 Ohio App.3d 4 [538 N.E.2d 1089]; *Wynn v. Estate of Holmes* (1991) 1991 OKCIVAPP 78 [815 P.2d 1231]; *Murphy v. Campbell* (Tex. 1997) 964 S.W.2d 265 [holding that date of deficiency assessment was latest date statute of limitations commenced, rejecting taxpayer's position that statute did not commence until it concluded tax court litigation challenging IRS deficiency assessment]; *Atkins v. Crosland* (Tex. 1967) 417 S.W.2d 150; *Mills v. Garlow* (Wyo. 1989) 768 P.2d 554; cf. *Clark v. Deloitte & Touche LLP* (2001) 2001 UT 90 [34 P.3d 209] [statute of limitations did not commence until tax court's decision upholding IRS's deficiency assessment became final; *Feddersen* holding was sound, but that case did not involve taxpayer continuing to pursue remedies in tax court].)

IV.   *Whether the Sahadis' Action Was Time-barred*

No case (decided either in California or in any other jurisdiction) cited by the parties or known to this court is on all fours with the circumstances of this case. No case of which we are aware has considered the precise question here: the date of accrual of the statute of limitations in an action against an accountant for negligent preparation of subsequently audited tax returns, where there is no tax deficiency determined to be owed by the client at the conclusion of the audit.

Accountants here argued (successfully) below that *Feddersen*'s bright-line rule has no application in this instance. They reiterate that position here, making essentially four points: (1) because *Feddersen* applies to cases in which the claimed negligence involves the accountant's negligent tax return preparation and the Sahadis claim that they were damaged because of Accountants' deficient tax audit representation of them, *Feddersen* is inapplicable; (2) because *Feddersen* held that the statute accrues when the IRS makes a tax deficiency assessment and no such deficiency was ultimately asserted here, the *Feddersen* rule is inapplicable; (3) since the IRS did not make a tax deficiency assessment, the two-year statute commenced when the Sahadis incurred damages during the audit process, and the statute was not tolled while they were exhausting their administrative appeals; and (4) *Feddersen*, even if it applies to the IRS-related claims, has no application to the Sahadis' claims related to state income taxes, because the FTB issued its deficiency notice in January 1996, over seven years before the Sahadis filed suit.

We address these four contentions below, combining the related contentions (2) and (3) in our discussion.

### A.  *Nature of Claimed Accountant Negligence*

Accountants assert that *Feddersen* does not apply because there is no claim that they were negligent in the preparation of client tax returns. Rather, they argue that a "close analysis" shows that the Sahadis contend that Accountants were negligent in the handling of the audit process. Accountants contend further that it was conclusively established that they were not negligent in the preparation of their clients' tax returns because (1) the proposed tax deficiency assessments were withdrawn, (2) the Sahadis do not seek any damages (i.e., taxes, penalties or interest) related to negligent tax return preparation, and (3) the Sahadis' own expert demonstrated that Accountants were not negligent in the preparation of the tax returns.

The Sahadis respond that—liberally construing the allegations of their complaint—they are claiming that Accountants were negligent *both* in the preparation of tax returns *and* in their representation of their clients in the audit process. They respond further that Accountants—by arguing that there was no negligent tax return preparation as a matter of law to support their view that the only possible negligence claim involves negligent audit representation—are arguing the merits of the malpractice claim in violation of principles relating to bifurcated trials.

We conclude that a fair reading of the complaint discloses that the Sahadis' claims are not limited to Accountants' alleged negligence in the representation of their clients during the tax audits. (See § 452 ["In the construction of a

pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties"].) To be certain, the complaint is replete with allegations of acts and omissions by Accountants during the audit, including claims that they failed to "properly represent" the Sahadis; refused to provide information requested by the taxing authorities; responded to IRS requests for specific information by "dump[ing] piles of documents on the tax agencies, which not only made it more difficult for the IRS to perform the audit but also made the IRS suspicious" of the Sahadis; "took positions with the IRS that were untenable," without advising and consulting with their clients; and concealed their lack of cooperation in the audit process from their clients.

But the Sahadis also allege that Accountants were negligent in the preparation of their clients' tax returns. They aver that Accountants failed to "adequately and professionally document[] and substantiate[] [the Sahadis'] tax returns, and did not maintain files concerning [the Sahadis'] tax returns sufficient to respond adequately to an FTB or IRS audit." Throughout the complaint, the Sahadis allege that their tax problems were due, at least in part, to Accountants' inadequate documentation or substantiation of tax positions taken in the returns. And included among the theories of their case, as alleged in the complaint, are that the Sahadis' tax problems arose from Accountants' failure to document or substantiate the positions taken in the tax returns, and that Accountants' allegedly deficient audit representation was spawned by their allegedly negligent tax return preparation. Therefore, the Sahadis' claims consist of a blend of allegedly deficient work by Accountants—tax preparation and audit representation.

Accountants argue that we should disregard the allegations of tax return preparation negligence because there was no such negligence. We reject that position.

There was no evidence presented below—aside from the outcomes of the audits themselves—that negated the Sahadis' claim that Accountants were negligent in the preparation of their clients' tax returns. In fact, there was no evidence presented—such as expert testimony—that supported the Sahadis' claim. This is hardly surprising. The court, based upon the parties' stipulation, bifurcated the case for an initial trial on Accountants' statute of limitations defense. Thus, the case was disposed of by a trial on the sole issue of whether the action was time-barred, pursuant to section 597. A separate trial is authorized under that statute when the defendant alleges as an affirmative defense that the action is time-barred or alleges another affirmative defense that is potentially dispositive and that is one "not involving the merits of the [plaintiff's cause of] action . . . ." (See *Wilshire-Doheny Associates, Ltd. v. Shapiro* (2000) 83 Cal.App.4th 1380, 1392 [100 Cal.Rptr.2d

478]; see also *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 752 [159 Cal.Rptr. 693, 602 P.2d 393] [statute of limitations bar "does not reflect on the merits of the action and thus is not a favorable termination for purposes of a subsequent malicious prosecution action"].)[9]

It does not necessarily follow (as Accountants urge) that because the taxing authorities ultimately found that no additional taxes, interest, or penalties were due, any damages that the Sahadis incurred were the result of allegedly deficient audit representation, and not because of services performed in preparing the tax returns. The Sahadis allege that the audit process was unnecessarily protracted because Accountants failed to adequately or properly document the positions taken when they prepared their clients' tax returns. Indeed, the Sahadis' counsel argued in the bifurcated trial that had the tax returns been prepared properly in the first instance, there might never have been an IRS or FTB audit. Therefore, the Sahadis may be able to show— assuming there was inadequate or improper documentation of the returns and that these errors or omissions were chargeable to Accountants—that the audit process would have concluded expeditiously had the original documentation for the tax returns been sufficient and readily available to the taxing authorities. (See generally Epstein & Spalding, The Accountant's Guide to Legal Liability and Ethics (1993) pp. 164–165 [discussing importance of accountant work papers used in preparation of tax returns].) Under such a scenario, the Sahadis may prove that negligence in the preparation of their tax returns was a substantial factor in causing them to incur costs associated with the audits—as well as any ancillary damages allegedly suffered from their protracted nature and/or as a result of the tax liens having been placed against their property. (See *Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 844 [60 Cal.Rptr.2d 780].) Therefore, we cannot conclude that the ultimate audit outcomes necessarily defeat the Sahadis' claims based upon Accountants' allegedly negligent preparation of their clients' income tax returns.[10]

Accountants also urge that the deposition testimony of the Sahadis' expert, accountant Phillip Arth, demonstrates that the Sahadis cannot establish their

---

[9] "When the answer pleads that the action is barred by the statute of limitations, or by a prior judgment, or that another action is pending upon the same cause of action, or sets up any other defense not involving the merits of the plaintiff's cause of action but constituting a bar or ground of abatement to the prosecution thereof, the court may, either upon its own motion or upon the motion of any party, proceed to the trial of the special defense or defenses before the trial of any other issue in the case, and if the decision of the court, or the verdict of the jury, upon any special defense so tried (other than the defense of another action pending) is in favor of the defendant pleading the same, judgment for the defendant shall thereupon be entered and no trial of other issues in the action shall be had unless that judgment shall be reversed on appeal or . . . vacated . . . ." (§ 597.)

[10] Having reached this conclusion, we of course express no opinion regarding the merits of this claim.

claim of negligence in the preparation of their tax returns. This argument is in part based upon citations to excerpts of Arth's deposition transcript included in respondents' appendix. These excerpts were not authenticated and there is no indication that they were even submitted to the court below. Accordingly, since the transcript excerpts—not having been filed or lodged in the superior court—were not proper matters for inclusion in the appendix (see Cal. Rules of Court., rules 8.120(b)(3)(A), 8.124(b)(1)(B), (b)(6)), we will disregard them. (*Canal Ins. Co. v. Tackett* (2004) 117 Cal.App.4th 239, 243 [11 Cal.Rptr.3d 626] [appellate court will disregard matters improperly included in appendix].)

But even were we to consider this expert testimony—which was to a certain extent cited in Accountants' briefs in support of their statute of limitations defense filed below—we would not find that it negated the Sahadis' claim based upon the negligent preparation of their tax returns. There is no indication that the court specifically relied on this evidence in granting Accountants' motion in limine. And in any event, as we have noted, the bifurcated trial to determine whether the action was time-barred conducted pursuant to section 597 was not a trial on the merits.

The claims against Accountants included negligence both in the preparation of the Sahadis' income tax returns and in representation in the ensuing audits by the taxing authorities. Accordingly, we reject Accountants' contention that *Feddersen, supra,* 9 Cal.4th 606, where the malpractice claim was based upon the accountants' negligent tax return preparation, is inapplicable to this case.[11]

## B. *Absence of Tax Deficiency Assessment*

In *Feddersen*, the corporate subsidiary plaintiff was advised by its accountants approximately two years before the tax audit was completed that it was facing a likely additional tax liability of approximately $300,000. (*Feddersen, supra,* 9 Cal.4th at p. 609.) Ultimately, the IRS assessed a tax deficiency of "several hundred thousand dollars" against the company. (*International Engine Parts, Inc. v. Feddersen & Co.* (1998) 64 Cal.App.4th 345, 348 [75 Cal.Rptr.2d 178].) Here, although the IRS advised the Sahadis of a preliminary assessment of additional taxes, interest, and penalties of $35 million, no tax deficiency was ultimately assessed against them. Accountants contend that, even if the malpractice claim here could be construed as being based upon the negligent preparation of tax returns, *Feddersen*'s bright-line rule

---

[11] Because the Sahadis' claims involve a blend of tax return preparation and tax audit representation negligence, we need not decide the applicability of *Feddersen*'s bright-line rule concerning the accrual of the statute of limitations in an accounting malpractice setting where there is no allegation that the accountant was negligent in the preparation of a tax return.

concerning the accrual of the statute of limitations does not apply here because of the absence of a final tax deficiency assessment.

### 1. *Feddersen's language*

The Sahadis and Accountants both point to language in *Feddersen* that they contend supports their respective positions. There are, indeed, numerous places in the decision in which the Supreme Court refers to the assessment of a tax deficiency as the triggering event for commencing the statute. (See, e.g., *Feddersen, supra,* 9 Cal.4th at pp. 608 ["at the time the IRS actually *assesses* the tax deficiency"; "[p]rior to the penalty assessment"], 611 ["until the tax deficiency was assessed"], 612 ["the date of deficiency assessment"; "determination of tax deficiency"], 616 ["prior to the notice of deficiency"], 617 ["[t]he deficiency assessment"], 620 ["until the taxing authority assesses a deficiency"], 621 [" 'until the IRS assesses a deficiency' " and "[b]y using the date of deficiency assessment or notice of deficiency assessment"], 622 ["when the tax deficiency is assessed by the IRS"].) But the Sahadis respond that in their reading of *Feddersen,* the court occasionally refers to the completion of the IRS audit process as being the moment that the two-year statute commences. For instance, the Supreme Court noted: "The deficiency assessment serves as a *finalization of the audit process* and the commencement of actual injury . . . ." (*Id.* at p. 617, italics added.) And later in the opinion, the court stated that "the malpractice tort is not complete until the audit is *finalized.* . . . Once the audit process is *finalized,* however, the harm caused by the accountant's negligence is no longer contingent and the taxpayer's cause of action in tort for alleged malpractice against the accountant accrues under section 339, subdivision 1." (*Id.* at p. 620, italics added.) And—in language that the Sahadis argue supports, and Accountants contend refutes, application of the *Feddersen* rule to this case—the court noted: "Although Feddersen's alleged negligence may have been 'discovered' during the audit, such potential liability could not amount to actual harm until the date of the deficiency tax assessment *or finality of the audit process.*" (*Ibid.,* italics added.)

We conclude from the above that the question cannot be resolved simply from reading the bare language of the court's holding in *Feddersen.* Although a strict application of *Feddersen* might suggest the outcome urged by Accountants, it is fair to surmise that the Supreme Court never even considered such an unusual set of circumstances as presented here, namely, an instance in which an eight-figure *preliminary* tax deficiency asserted by the IRS ultimately evaporates at the conclusion of the audit process. We therefore must look more closely at the reasoning for the holding in *Feddersen,* including the policy considerations enunciated by the Supreme Court in support of its decision.

## 2. *Feddersen's objectives and policies*

The court in *Feddersen* stated that its bright-line test served three policy objectives: "The foregoing rule both conserves judicial resources and avoids forcing the client to sue the allegedly negligent accountant for malpractice while the audit is pending. It also avoids requiring the client to allege facts in the negligence action that could be used against him or her in the audit, without first allowing the accountant to correct the error (or mitigate the consequences thereof) during the audit process. [Citation.]" (*Feddersen, supra,* 9 Cal.4th at p. 620.) Applying *Feddersen* to cases similar to the circumstances presented here—i.e., where there is a preliminary IRS finding of a tax deficiency that is ultimately reversed by the time the audit process is concluded—would subserve all three goals.

Delaying the accrual of the two-year statute under section 339, subdivision 1 would conserve judicial resources and would obviate the need for the client to sue the accountant during the pendency of the audit; it would eliminate the necessity of a taxpayer filing a protective suit against his or her accountant in all cases in which there is a preliminary deficiency finding and the possibility of accountant negligence. Delayed accrual would also serve the interests of the taxpayer because it would be expected that in most instances he or she (1) would want to use the services of the accountant to assist during the IRS process;[12] and (2) would be loath to take a position in a separate negligence suit (i.e., that the client had been damaged by the accountant's negligent return preparation, thereby possibly admitting the validity of the IRS's preliminary assessment of a tax deficiency) that would be harmful to the client in the audit process. Thus, the policies enunciated by the Supreme Court apply with equal force to a case (such as *Feddersen*) where a preliminary tax assessment results in a final IRS determination of a tax deficiency, and to an instance (such as here) where a preliminary assessment of a deficiency evolves into an ultimate finding that no additional tax is owed.

Delayed accrual here is also consistent with the court's intention to establish a "bright line that, once crossed, commences the limitations period under section 339, subdivision 1, and therefore provides certainty in terms of the statute's application." (*Feddersen, supra,* 9 Cal.4th at p. 621.) One rule for all actions involving the negligent preparation of subsequently audited tax

---

[12] The court observed: "Most taxpayers are likely to contact the accountant who prepared the returns in question for assistance in the audit process. If the taxpayer were required to file suit against the accountant at this time, the effort to clarify any mistakes in filing would be frustrated. [Citation.]" (*Feddersen, supra,* 9 Cal.4th at p. 621.) This observation holds true irrespective of whether the taxpayer faced with a preliminary deficiency ultimately receives an IRS deficiency assessment or is vindicated.

returns in which the statute commences when the audit process is finalized promotes the court's goal that there be "uniformity in application" with respect to the statute of limitations. (*Ibid.*) In contrast, there would be no uniformity were the *Feddersen* rule applied when the audit concludes with the issuance of an IRS tax deficiency assessment, and a different rule—with an accrual date much earlier in the audit process—applied if the audit concludes without a tax deficiency assessment.

As an illustration of both the propriety of applying *Feddersen* to the case before us and the anomalies that would be created by a contrary holding, we consider two hypothetical taxpayer-clients (Client 1 & Client 2). Each client has filed a tax return prepared by its accountant that is subsequently selected by the IRS for audit. In each instance, the client has received a preliminary notice of a tax deficiency that it challenges through the IRS administrative appeals process. Each client has incurred substantial consequential losses (e.g., accountant and attorney fees) defending its tax position. In each instance, the client can present a colorable argument that its consequential losses were caused by its accountant's negligent tax preparation services— irrespective of whether its tax position ultimately prevails in the audit. The IRS has issued a tax deficiency assessment to Client 1; the tax audit has concluded with no tax deficiency determined owing by Client 2. If we were to conclude that *Feddersen* applies only in cases in which the audit concludes with the assessment of a tax deficiency, Client 1 could bring an action within two years after the conclusion of the audit; Client 2 could not. As these hypothetical scenarios demonstrate, there would be a substantial dimming of *Feddersen*'s bright-line rule if different standards were applied to the two clients.

In the above example, each client—by forgoing suit against the negligent accountant at the time of the preliminary deficiency based upon the assumption that the *Feddersen* rule applies—would essentially be betting against itself that it would not "win" the audit outright. The specter of "winning" the audit but "losing" the case against the accountant (because of its untimely filing) might force clients into filing protective, premature malpractice suits at the time they are notified of the preliminary deficiency, notwithstanding the holding in *Feddersen* that the claim does not accrue until a final assessment of a deficiency. Thus, establishing disparate rules of accrual for Client 1 and Client 2 would, in fact, promote an erosion of *Feddersen* and would thwart the principles upon which it was decided.

■ In reaching the conclusion that applying *Feddersen* in this instance would subserve the three objectives described in that case, we recognize that there are countervailing policies applicable generally to limitations issues. "[S]tatutes of repose are in fact favored in the law, 'designed to promote

justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. . . . ' [Citation.]" (*Adams, supra,* 11 Cal.4th at p. 592 (lead opn. of Arabian, J.); see also *Jordache, supra,* 18 Cal.4th at p. 756.) Further, in the context of legal malpractice actions, the Supreme Court has expressed the concern that "[d]elaying recognition of actual injury until related litigation concludes would give a client who has sustained actionable damages, and who is aware of the attorney's error, unilateral control over the limitations period." (*Jordache, supra,* 18 Cal.4th at p. 755, citing *Laird v. Blacker* (1992) 2 Cal.4th 606, 618 [7 Cal.Rptr.2d 550, 828 P.2d 691].) These countervailing policies notwithstanding, the Supreme Court has made it clear that—in order to conserve judicial resources, avoid premature negligence suits against accountants, and to eliminate the need for clients to take inconsistent positions during the audit process—the finalization of the audit is the "bright-line" date of accrual of the client's cause of action for his or her accountant's negligent preparation of tax returns. (*Feddersen, supra,* 9 Cal.4th at pp. 620–622.)

### 3. *Date of "actual injury"*

Accountants argue that the Sahadis sustained "actual injury" as early as February 1997, when they began incurring professional fees in connection with the IRS audit. This argument is flawed for the simple reason that it is dependent upon the inapplicability of *Feddersen* to this case. In *Feddersen,* the court concluded that the date of the deficiency assessment represented the date of "actual injury" for purposes of commencing the statute of limitations under section 339, subdivision 1. (*Feddersen, supra,* 9 Cal.4th at p. 621.) Because we have concluded above that the rule in *Feddersen* applies to accounting malpractice actions founded upon allegedly negligent tax return preparation, irrespective of whether the IRS ultimately issues a tax deficiency assessment at the conclusion of the audit, the date the Sahadis sustained "actual injury" was the conclusion of the audit process (i.e., when the Sahadis and the IRS signed the form 870).

Contrary to Accountants' assertions, our holding that the audit's conclusion marked the date of accrual, despite the Sahadis having incurred damages in the form of professional fees much earlier, is not inconsistent with *Feddersen.* The court's majority held: "The use of the date of deficiency assessment to mark the date of actual injury in accountant malpractice cases provides the parties with a bright line that, once crossed, commences the limitations period under section 339, subdivision 1, and therefore provides certainty in terms of the statute's application. *Obviously, in some cases injury will be clear before the notice of deficiency is given to the taxpayer.* But uniformity in application serves a more important function when interpreting statutes of limitation than

does the identification of the precise point at which some harm might be said to have occurred, even if negative collateral consequences might arise from the *tentative* assessment of additional tax liability." (*Feddersen, supra,* 9 Cal.4th at pp. 621–622, italics added.) Justice Kennard criticized the majority's reasoning, observing: "[P]erhaps most importantly, the malpractice of an attorney or accountant may severely damage the client even when the third party litigation terminates in the client's favor. As I have stated, 'it defies common sense to hold, as the majority does, that a client has not sustained "actual injury" even though the client has paid thousands, perhaps hundreds of thousands, of dollars [in litigation costs] because the attorney's malpractice has compelled the client to prosecute or defend third party litigation.' [Citation.]" (*Id.* at p. 626 (conc. & dis. opn. of Kennard, J.).)

■ The conclusion we draw from the above, including the majority's implicit consideration of Justice Kennard's criticisms, is that *Feddersen* recognized that an accounting client may sustain damage *in fact* (e.g., costs associated with the audit) *prior to* the conclusion of the audit process (which, in *Feddersen*, was marked by an IRS tax deficiency assessment). The majority of the *Feddersen* court, however, chose for policy reasons to establish a bright-line test that actual injury *in law* occurs for purposes of the accrual of the statute of limitations only at the conclusion of the audit process. (See *Feddersen, supra,* 9 Cal.4th at pp. 621–622; see also *Apple Valley, supra,* 98 Cal.App.4th at p. 945 ["*Feddersen* did *not* say that there could never be actual injury *in fact* until the IRS assessed a deficiency"]; *Curtis v. Kellogg & Andelson, supra,* 73 Cal.App.4th at p. 500, fn. 7 [applying *Feddersen*, accounting malpractice statute of limitations did not commence when client incurred audit-related attorney fees prior to IRS's notice of deficiency].)

### 4. Jordache

Accountants argue that under *Jordache, supra,* 18 Cal.4th 739, the two-year statute commenced when the Sahadis sustained any appreciable and actual harm, i.e., when they incurred professional fees to defend their position during the tax audit. There, the Supreme Court held that "[a]ctual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions. [Citations.]" (*Id.* at p. 743.) Accountants' position ignores the fact that *Jordache* was decided in the context of a different statute (section 340.6) governing the limitations period for a different form of professional negligence (attorney malpractice).

The clients in *Jordache* asserted that attorneys were negligent in defending them by failing to advise them concerning, or to assert on their behalf, an

entitlement to liability insurance benefits covering the suit. (*Jordache, supra*, 18 Cal.4th at p. 743.) They argued that their malpractice claim did not accrue until their suit against their insurer was settled, allegedly for less than they would have been entitled had their attorneys not been negligent. (*Ibid.*) The court rejected that argument, concluding that the clients' claim accrued much earlier when they incurred substantial damages—both in the form of "unpaid insurance benefits for defense costs in the [third party] action and in lost profits from diversion of investment funds to pay these defense costs. . . . [T]hese damages were sufficiently manifest, nonspeculative, and mature that Jordache tried to recover them as damages in its insurance coverage suits." (*Id.* at p. 752.) In so concluding, the *Jordache* court reiterated the rule of accrual that "[a]ctual injury occurs when the client suffers any loss or injury legally cognizable as damages in a legal malpractice action based on the asserted errors or omissions. [Citations.]" (*Id.* at p. 743; see also *id.* at p. 751.)

In response to the clients' contention that the statute of limitations, under *Feddersen, supra*, 9 Cal.4th 606, did not accrue until the conclusion of their suit with their insurers, the Supreme Court in *Jordache* clearly explained that the *Feddersen* rule applied to a different form of professional negligence and was formulated within a different statutory context. The court stated that the *Jordache* clients "misconceive[] *Feddersen* by attempting to apply that case to an analysis of section 340.6. As *Adams* noted, *Feddersen* presented specialized circumstances and did not articulate a rule of broad or general applicability. (*Adams, supra*, 11 Cal.4th at p. 588 (lead opn. of Arabian, J.); *id.* at pp. 595–596 (conc. opn. of Kennard, J.).) In *Feddersen*, the court considered when an accountant's allegedly negligent tax return preparation caused harm that commenced the two-year limitations period provided in section 339, subdivision 1. (*Feddersen, supra*, 9 Cal.4th at p. 608.) [¶] A key distinction between *Feddersen* and *Jordache*'s case is the particular limitations statute involved. *Feddersen* dealt with section 339, subdivision 1, and its two-year limitations period for suits 'upon a contract, obligation or liability not founded upon an instrument of writing . . . .' (§ 339, subd. 1; *Feddersen, supra*, 9 Cal.4th at pp. 621–622.) The standards for beginning that limitations period result from judicial decisions rather than legislative enactment. [Citations.] In section 340.6, the Legislature established a detailed, explicit, and exclusive scheme for commencing and tolling the legal malpractice limitations periods. The Legislature did not establish a comparable scheme for section 339. Therefore, *Feddersen* does not, and was not intended to, provide rules for legal malpractice actions—the only subject we address here." (*Jordache, supra*, 18 Cal.4th at pp. 763–764, fn. omitted.)[13]

---

[13] Counsel for Accountants at oral argument noted that the Supreme Court in *Jordache, supra*, 18 Cal.4th at page 763, overruled a case it had decided four years earlier, *ITT Small Business Finance Corp. v. Niles* (1994) 9 Cal.4th 245 [36 Cal.Rptr.2d 552, 885 P.2d 965] (*ITT*). They argued that this action signaled the demise of the bright-line rule in *Feddersen*,

The Supreme Court in *Jordache* did not announce an abandonment of the *Feddersen* rule for determining the date of accrual of an accounting malpractice claim based upon the negligent preparation of tax returns. *Jordache*, as a legal malpractice case, thus has no application to the issue here—the date of accrual under section 339, subdivision 1 for the Sahadis' claim based upon Accountants' negligent preparation of income tax returns.

### 5. Apple Valley

Accountants also cite *Apple Valley, supra*, 98 Cal.App.4th 934, in support of their contention that the statute of limitations accrued here when the Sahadis incurred professional fees to defend their position during the tax audit. That accounting malpractice case—having nothing to do with the alleged negligent preparation of tax returns—is inapposite. There, the client (school district) alleged that its accountants made misrepresentations in an audit report that induced it to provide funds to a charter school. (*Id.* at p. 937.) The audit report was prepared in January 1998, and in August of the same year, the district, after hiring a different accountant to audit the charter school's attendance and after receiving documentation from a former school employee indicating wrongdoing by the school, revoked the charter to the school. (*Id.* at p. 939.) The State Controller conducted an audit of the attendance at the charter school, and the audit report (completed in 2000) concluded that the school had received over $4 million in funding to which it was not entitled. (*Id.* at p. 940.) The district appealed that audit, which appeal was pending when the malpractice suit was filed. (*Ibid.*) After the district filed suit in December 2000, the defendants' demurrer was sustained without leave to amend on the basis that the action was time-barred. (*Id.* at p. 941.)

The appellate court found that more than two years had elapsed as to the first prong of the statute of limitations—that the plaintiff knew of or

*supra*, 9 Cal.4th 606. We disagree. In *ITT*, *supra*, at page 258, the court enunciated a categorical rule that "in transactional legal malpractice cases, when the adequacy of the documentation is the subject of dispute, an action for attorney malpractice accrues on entry of adverse judgment, settlement, or dismissal of the underlying action. It is at this point that the former client has discovered the fact of damage *and* suffered 'actual injury' due to the malpractice under section 340.6." The *Jordache* court, overruling *ITT*, held that the rule of accrual based upon the client sustaining legally cognizable injury or loss must apply uniformly in the legal malpractice setting, concluding that "[t]he statutory scheme cannot accommodate a peremptory rule" under which actual injury is deemed to accrue at a different time when the legal malpractice arises from transactional matters. (*Jordache, supra*, at p. 763.) And immediately after its discussion of *ITT*, the Supreme Court directly concluded that the *Feddersen* rule applicable to an accountant's negligent preparation of tax returns—a rule which it "ha[d] no occasion in [*Jordache*] to reexamine" (*Jordache, supra*, at p. 764, fn. 10)—was irrelevant to its discussion because it involved a different limitations statute (§ 339, subd. 1) than the particular statute it was considering (§ 340.6), governing legal malpractice claims. (*Jordache, supra*, at pp. 763–764.) Thus, the overruling of *ITT* did not undermine the viability of *Feddersen*'s bright-line rule applicable to this accounting malpractice case.

reasonably should have suspected the wrongdoing. (*Apple Valley, supra,* 98 Cal.App.4th at p. 943.) As to the second prong, the district argued, relying on *Feddersen, supra,* 9 Cal.4th 606, that it had not suffered actual injury until January 2000 (when the State Controller's audit report claimed that the district was liable for overpayments to the charter school). (*Apple Valley, supra,* at p. 944.) The appellate court disagreed, holding that the district sustained actual injury "no later than early 1998, when the [d]istrict recognized the allegedly improper conduct and incurred out-of-pocket expenses [i.e., investigative and attorney fees] to determine its extent." (*Id.* at p. 951.)

In so concluding, the *Apple Valley* court held that the *Feddersen* rule of accrual was inapplicable to the case before it. (*Apple Valley, supra,* 98 Cal.App.4th at pp. 944–947.) It cited *Van Dyke, supra,* 46 Cal.App.4th 446, an accounting malpractice case in which the appellate court also declined to apply the *Feddersen* rule. (*Id.* at pp. 454–455.) In *Van Dyke,* the accountant was allegedly negligent in advising his clients that "they would receive a 'dollar-for dollar' tax credit for the fair market value of the land [they] donated." (*Id.* at p. 449.) The clients allegedly relied on that advice by donating the real property. (*Id.* at p. 448.) After doing so, their accountant informed them (in 1991, nearly three years before they filed suit) that he had been mistaken, that they would receive a tax deduction rather than a tax credit, and that the deduction would be spread over a number of years. (*Id.* at p. 449.) The clients alleged that they would never have donated the property had they known the actual tax treatment applicable to the transaction. (*Ibid.*) Likening the circumstances in *Van Dyke* to those before it, the *Apple Valley* court found *Feddersen* inapplicable: "As in *Van Dyke,* the alleged malpractice in this case was not negligent preparation of a tax return, but a representation which induced detrimental reliance." (*Apple Valley, supra,* at p. 946.) It therefore agreed with *"Van Dyke*'s determination that the *Feddersen* rule should not apply outside of the factual context in which it was formulated, i.e., negligent preparation of a tax return." (*Id.* at p. 947.)

After concluding that the *Feddersen* rule was inapplicable, the *Apple Valley* court discussed *Jordache, supra,* 18 Cal.4th 739 at length. (*Apple Valley, supra,* 98 Cal.App.4th at pp. 947–953.) Although the court acknowledged that *Jordache* was a legal malpractice case involving section 340.6, a statute not applicable to accounting malpractice claims (*Apple Valley, supra,* at p. 951), it held that "[n]otwithstanding the lack of a statement from the Supreme Court that *Jordache*'s reasoning should apply to accounting malpractice cases, we are convinced that it should apply except to cases [that] fall within *Feddersen*'s narrow holding governing negligent tax return preparation." (*Id.* at p. 952.) It therefore held that *Jordache*'s analysis of "actual injury" applied to bar the district's claims. (*Apple Valley, supra,* at p. 953.)

Here, we consider the application of *Feddersen* to accounting malpractice that *is* based upon a claim that the client incurred damages as a result of the negligent preparation of tax returns. The fact that *Feddersen* "did not articulate a 'rule for all seasons' " (*Adams, supra,* 11 Cal.4th at p. 588 (lead opn. of Arabian, J.))—or that it did not even prescribe a rule applicable to all accounting malpractice actions—is not germane. Our application of *Feddersen* here—as well as our consequent disinclination to apply *Jordache*'s "actual injury" analysis—is easily reconcilable with *Apple Valley*'s refusal to apply *Feddersen*'s bright-line rule where the accountants' allegedly deficient performance did not concern tax return preparation.

### 6. *Exhaustion of administrative remedies*

Lastly, we reject Accountants' assertion that the Sahadis' claims are barred because the statute of limitations is not tolled during the administrative appeals process of a tax audit. In support of this contention, they cite a pre-*Feddersen* case, *Schrader v. Scott* (1992) 8 Cal.App.4th 1679 [11 Cal.Rptr.2d 433] (*Schrader*). There, the accountants advised their clients concerning certain tax shelters; the IRS disallowed the loss deductions based upon those tax shelters. (*Id.* at pp. 1681–1682.) The clients later sued the accountants for negligence in October 1989 (*id.* at p. 1681), and the defendants asserted that the action was time-barred because it was filed more than two years after the plaintiffs had received the IRS's notice of final adjustment and deficiency (in July 1987). (*Id.* at p. 1682.) The plaintiffs argued that the statute of limitations was tolled after July 1987 "while they were exhausting their administrative remedies." (*Ibid.*) The trial court granted the defendants' motion for summary judgment. (*Ibid.*) The appellate court affirmed. (*Id.* at p. 1687.)

*Schrader* does not support Accountants' contention that the Sahadis' claims are time-barred. As pointed out by the Supreme Court in *Feddersen*, "The court [in *Schrader*] did not discuss whether actual injury was sustained prior to the notice of deficiency as a result of the costs incurred in hiring other professionals to assist in the audit, or at the time the deficiency was assessed by the IRS. Although the *Schrader* court noted that the plaintiffs *discovered* their cause of action in 1986 when they 'concluded that the defendants had been negligent' in their tax advice ([*Schrader, supra,* ]8 Cal.App.4th at p. 1682), the court did not discuss the point of *actual injury* except to note that [the] defendants had argued that actual injury occurred no later than the date the plaintiffs received a notice of final adjustment and deficiency assessment from the IRS. (*Ibid.*)" (*Feddersen, supra,* 9 Cal.4th at p. 616–617.) And in *Schrader,* the court was considering whether the statute was tolled *after* the IRS audit was concluded with the issuance of a notice of deficiency, and did not address the issue of whether the statute was tolled *prior to* completion of the IRS audit.

We conclude that *Schrader* does not compel a finding here that the claims are time-barred. Accountants' argument that the Sahadis' suit is barred by section 339, subdivision 1 because the two-year statute was not tolled during the administrative appeals process of the IRS audit is simply another way of stating the position that we have rejected—that the statute of limitations commenced early in the audit process when the Sahadis incurred costs to challenge the proposed deficiency assessment, because the audit process was concluded without the assessment of a tax deficiency. (See also *Mills v. Garlow, supra,* 768 P.2d at p. 557 [holding under Wyoming law that date of " 'discovery . . .' " for statute of limitations for accounting malpractice for negligent preparation of tax return commences upon IRS's issuance of "statutory notice of deficiency or, in the alternative, at the equivalent time of taxpayer agreement with the IRS"].)

### 7. *Conclusion*

■ We conclude that under *Feddersen, supra,* 9 Cal.4th 606, the statute of limitations for the Sahadis' claims against Accountants for the negligent preparation of the clients' federal income tax returns commenced in August 2002 when the IRS tax audit was concluded. This conclusion was marked by the IRS's execution—following the Sahadis' execution in May 2002—of the form 870 settling the issues in the audit with the IRS withdrawing the tax deficiency it previously proposed. Under the *Feddersen* rule, this represented the date the Sahadis sustained "actual injury." Therefore, the Sahadis' action was timely under section 339, subdivision 1.

### C. *The FTB Audit*

Accountants argue that even if *Feddersen* applies to claims related to the preparation of the Sahadis' federal income tax returns, any claims based upon the preparation of state income tax returns are nonetheless time-barred. They contend that since the FTB audit concluded in January 1996 with the FTB issuing a notice of action assessing additional taxes of $618,055, the Sahadis' October 2003 suit was filed more than five years too late. We reject this contention.

■ California's Personal Income Tax Law (Rev. & Tax. Code, § 17001 et seq.) was originally enacted in 1935. (Stats. 1935, ch. 329, § 1, p. 1090.) The law as revised incorporates (except as otherwise stated) the Internal Revenue Code. (See Rev. & Tax. Code, § 17024.5.) Therefore, given "[t]he obvious parallelism of the federal and state statutes" (*Spurgeon v. Franchise Tax Board* (1984) 160 Cal.App.3d 524, 530 [206 Cal.Rptr. 636]), our courts view federal decisions construing comparable laws as persuasive authority in interpreting state income tax statutes. (*Meanley v. McColgan* (1942) 49 Cal.App.2d 313, 317 [121 P.2d 772]; *J. H. McKnight Ranch, Inc. v. Franchise Tax Bd.* (2003) 110 Cal.App.4th 978, 985, fn. 1 [2 Cal.Rptr.3d 339].)

■ Under California's " 'pay now, litigate later' rule in tax cases[,] . . . a taxpayer may not obtain judicial review of the validity of a tax which is due but has not been paid." (*Milhous v. Franchise Tax Bd.* (2005) 131 Cal.App.4th 1260, 1265–1266 [32 Cal.Rptr.3d 640], citing *State Bd. of Equalization v. Superior Court* (1985) 39 Cal.3d 633, 638 [217 Cal.Rptr. 238, 703 P.2d 1131].) The taxpayer's recourse is to pay the contested tax and file a request for refund with the FTB (see Rev. & Tax. Code, § 19322). Revenue and Taxation Code section 19311, subdivision (a) provides an extension on the filing of such a state refund claim where it may be related to an issue before the IRS with respect to the taxpayer's federal return; under that statute, a taxpayer may make a claim for a state income tax refund within two years after the IRS makes a final determination that results in an adjustment of the amount of federal income tax owing.[14] Once the taxpayer has exhausted his or her administrative remedies upon the FTB's denial of the refund claim, " 'any taxpayer claiming that the tax computed and assessed is void in whole or in part may bring an action, upon the grounds set forth in that claim for refund, against the [FTB] for the recovery of the whole or any part of the amount paid.' [Citation.]" (*J. H. McKnight Ranch, Inc. v. Franchise Tax Bd.*, *supra*, 110 Cal.App.4th at p. 986, quoting Rev. & Tax. Code, § 19382.)

In this instance, the FTB issued its notice of action in January 1996 wherein it determined that the Sahadis owed $618,055 in additional taxes. The Sahadis attempted to appeal that determination by the FTB but the appeal was rejected because they had not paid the taxes assessed. After commencing payments, the Sahadis submitted a claim for refund. The FTB notified the Sahadis in April 2000 that it was suspending action on the refund claim because there was an appeal pending with the IRS on the same issue; the FTB indicated that it would take no further action until the IRS proceedings had concluded.

Under these circumstances, it would be unfair and incongruous to hold that the Sahadis' malpractice suit as it relates to the IRS audit is timely under the *Feddersen* rule, but that the action is time-barred insofar as the claims related to the FTB audit. Were we to hold that the Sahadis' state-tax-audit-related claim is barred, we would promote the filing of early protective litigation by taxpayers against their accountants in instances where the FTB audit preceded the IRS audit, a result that we feel confident would run contrary to the policy considerations enunciated in *Feddersen*. Furthermore, given the fact that the FTB suspended any action on the Sahadis' refund request pending the outcome of the IRS audit, the Sahadis' claims against Accountants related to

---

[14] "If a change or correction is made or allowed by the Commissioner of Internal Revenue or other officer of the United States or other competent authority, a claim for credit or refund resulting from the adjustment may be filed by the taxpayer within two years from the date of the final federal determination (as defined in Section 18622), or within the period provided in [Revenue and Taxation Code] Section 19306, 19307, 19308, or 19316, whichever period expires later." (Rev. & Tax. Code, § 19311, subd. (a)(1).)

the IRS and FTB audits were effectively joined. For purposes of accrual of the statute of limitations under section 339, subdivision 1, the date the IRS audit process concluded with the execution of the form 870 marked the date of "actual injury."

## DISPOSITION

The judgment is reversed.

Bamattre-Manoukian, Acting P. J., and Mihara, J., concurred.

Respondents' petition for review by the Supreme Court was denied December 12, 2007, S157965. Kennard, J., was of the opinion that the petition should be granted.